**In re Joseph A. TRUDEAU, Debtor.**

**Andrew KUCHINSKY, Plaintiff,**

**v.**

**Joseph A. TRUDEAU, Defendant.**

**Bankruptcy No. 83–00399–HL.**
**Adv. No. 83–0439.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 1, 1983.

Charles S. Mancuso, Boston, Mass., for plaintiff.

William J. Mahoney, Jr., Mooney, Mahoney & Cushing, Boston, Mass., for defendant.

## MEMORANDUM ON DISCHARGEABILITY

HAROLD LAVIEN, Bankruptcy Judge.

Joseph A. Trudeau ("debtor") filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the District of Massachusetts on March 24, 1983. Andrew Kuchinsky ("plaintiff-creditor") was listed as a default judgment creditor in the amount of $3,065.00. On May 17, 1983, the plaintiff filed a complaint seeking judgment that the debt owed to him by the debtor was non-dischargeable under the meaning of 11 U.S.C. § 523(a)(6). A trial was held before this Court on August 8, 1983. The Court, having heard the evidence, makes the following findings of facts and rulings of law.

The debtor was an employee of the Metropolitan District Commission ("MDC") with the title of "skilled laborer". For the two years prior to the incident in question, the debtor worked at the MDC pumping station in Chestnut Hill. He was supervised by the plaintiff, Mr. Kuchinsky.

Mr. Trudeau is a reformed alcoholic. He has been an active member of Alcoholics Anonymous since 1971. The plaintiff was aware of this and ridiculed the debtor during his employment at Chestnut Hill. Indeed, the debtor filed a complaint with the Office for Civil Rights alleging discriminatory treatment on the basis of a handicap on November 30, 1979. It is not apparent that the plaintiff was aware of the complaint until recently.

In any case, the remarks continued until January 23, 1980. At that date, the plaintiff took the defendant to the gate house of the reservoir to recheck the height of the reservoir, a reading the defendant had made the day before. The plaintiff pointed out an error that the defendant made. What happened next is in some dispute; the defendant claims that the plaintiff made another prejudicial statement, while the plaintiff claims that the defendant refused to turn off the lights. In any case, an altercation took place where the defendant threw two punches, knocking the plaintiff

down and giving him two cuts above the eye. Apparently, the plaintiff did not retaliate. The plaintiff then returned to the main building where he remarked to another MDC employee that "he got the bastard." The plaintiff returned to the main building and, from there, went to the hospital to receive some emergency treatment for his cuts.

On December 10, 1980, the plaintiff filed a civil complaint in the Dedham District Court alleging assault and battery. On February 13, 1981, the plaintiff requested a default as no answer was filed by the defendant, Mr. Trudeau. On April 13, plaintiff requested a default judgment and execution was duly issued in the amount of $3,065.00.

11 U.S.C. § 523(a)(6) reads:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt...

(b) for willful and malicious injury by the debtor to another entity or to the property of another entity....

In defining "willful and malicious", Congress noted that:

[U]nder this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) [sic], held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep. No. 95–595, Cong., 1st Sess. 365 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320.

A careful reading of *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), however, does not disclose such a "looser standard," either for willfulness or malice. The *Tinker* Court defined willful as "intentional and voluntary." *Id.* at 485, 24 S.Ct. at 508. In discussing malice, the Court noted that:

[I]n *United States v. Reed,* 86 Fed. 308, it was held that malice consisted in the wilful doing of an act which the person

doing it knows is liable to injure another, regardless of the consequences; and a malignant spirit or a specific intention to hurt a particular person is not an essential element. Upon that principle, we think a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception.

*Tinker v. Colwell,* 193 U.S. at 487, 24 S.Ct. at 509. Congress' comments, therefore, should be reserved only for those cases that may have misinterpreted *Tinker* to equate malice with recklessness. *Compare, In re McCloud,* 7 B.R. 819 (Bkrtcy.M.D.Tenn. 1980) *and In re Auvenshine,* 9 B.R. 772 (Bkrtcy.W.D.Mich.1981) *with Haerynck v. Thompson,* 228 F.2d 72 (10th Cir.1955); *Greenfield v. Tuccillo,* 129 F.2d 854 (2d Cir. 1942) *and In re Irwin,* 2 B.C.D. 783 (N.D. Iowa 1976).

▆▆ Moreover, this Court disagrees with those cases that imply that malice requires an "intent to harm." *See, e.g., In re Fiedler,* 28 B.R. 28, 32 (Bkrtcy.M.D.Pa. 1982); *In re Langer,* 12 B.R. 957, 959–61 (B.C.D.N.D.1981); *In re Hodges,* 4 B.R. 513 (Bkrtcy.W.D.Va.1980). There is nothing in the legislative history to suggest that malice requires specific malice or intent to harm. *In re Ertz,* 28 B.R. 1020, 10 B.C.D. 883, 884 (D.C.D.S.D.1983); *In re McGiboney,* 8 B.R. 987, 989 (Bkrtcy.N.D.Ala.1981); *In re Friedenberg,* 12 B.R. 901, 905 (Bkrtcy. S.D.N.Y.1981). Accordingly, this Court holds that willful means intentional and malicious means an intentional or conscious disregard of one's duties.

▆▆ The evidence adduced at trial proved the injury to be both willful and malicious. The act was voluntary and the defendant knew or should have known it was wrong. Even assuming that the plaintiff ridiculed the defendant just preceding the battery, that does not constitute an automatic defense. Anger, seldom if ever justifies vio-

lence.[1] The price one pays for participation in a civilized society is the abandonment of the reaction of the jungle. The law replaces, as it must, self-help violence. Indeed, the defendant had initiated a civil rights action against the plaintiff under the specific federal acts designed to prevent discrimination or harassment on the job.

At trial, the defendant testified that he had reached his "breaking point", had a mental breakdown, and subsequently entered the hospital for a brief period of time. Although mental illness is not a defense to civil liability, *McGuire v. Almy*, 297 Mass. 323, 8 N.E.2d 760 (1937), it may be a defense to malice. For example, if one is mentally ill, he may possess the requisite intent but may not have the capacity to know that his actions are wrongful. At trial, however, only the defendant testified. No hospital records were introduced, no doctors testified, and no other witnesses testified on the defendant's behalf. Moreover, an independent witness testified that the defendant said, shortly after the incident, "I got the bastard", indicative of the requisite malice.

As a final note, although the plaintiff's conduct was inexcusable, the bankruptcy court, even as a court of equity, cannot in the name of equity ignore established legal framework and dispense its own abstract idea of justice. *In re Ahlswede*, 516 F.2d 784, 789 (9th Cir.1975).

The psyche of most, if not all of us, has a flash point at which vocal abuse may attain in our minds the status of "fighting words." That point may have been reached here in the gate house and if it did, could explain and even excuse any criminal responsibility for the assault. But as both Mahatma Gandhi and Dr. Martin Luther King knew, one may at times feel impelled to react to a situation but only at a cost. Here, the provocation may have ruled out criminal malice but actually reinforced, as evidenced by his subsequent remark, the intentional nature of the Trudeau act.

1. As children, the message was taught through the nursery rhyme, "Sticks and stones may break my bones but names will never hurt me." While that may be a questionable truth, it deals

The claim is not dischargeable and judgment shall issue in the amount of $3,065.00.

with the issue of limiting the use of force to that necessary to repel like force. *Monize v. Begaso*, 190 Mass. 87, 76 N.E. 460 (1906), Prosser, Law of Torts § 19 (4th Ed.1971).