In re George LUBANSKI, Debtor.

Jane BRZYS, Plaintiff,

v.

George LUBANSKI, Defendant.

Bankruptcy No. 94–42035.
Adv. No. 94–4269.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 8, 1995.

Eric D. Kornblum, Westfield, MA, for debtor/defendant.

Michael R. Siddall, Springfield, MA, for plaintiff.

### *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

### I. *INTRODUCTION*

Before the Court for determination is a Complaint, pursuant to 11 U.S.C. § 523(a)(6), filed by Jane Brzys ("Brzys" or "Plaintiff") against the debtor George Lubanski (the "Debtor" or the "Defendant") seeking the nondischargeability of a debt evidenced by a judgment obtained by Brzys against the Debtor in state court. The said judgment was based on the Debtor's installation of an illegal eavesdropping device in Brzys' office in violation of Mass.Gen.Laws ch. 272, § 99. The issue before the Court is whether the debt to the Plaintiff, evidenced by a state court judgment for violation of Mass.Gen. Laws Ann. ch. 272, § 99 (West 1990), is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### II. *FACTS*

The material facts are not disputed.

Approximately three years prior to the filing of bankruptcy, Brzys and Diane Baldyga Jakobowski ("Jakobowski") (collectively, the "State Court Plaintiffs") commenced a civil action against the Debtor and defendants Cheryl Beatty ("Beatty") and Westfield Municipal Gas and Electric Light Department ("Westfield") in the Commonwealth of Massachusetts District Court Department of the Trial Court, Springfield Division (the "State Court"), Civil Action No. 90T–61 (the "State Court Action"). The State Court Action was based upon the Debtor's installation of an illegal eavesdropping device in plaintiff Brzys' office.[1] After a trial, on March 18, 1991, the State Court issued findings and entered judgment[2] (the "Judgment") in favor of the State Court Plaintiffs against the Debtor on Count I of the complaint in the amount of $3,900 (plus interest, costs, and attorney's fees). In support of the Judgment, the State Court made the following findings of fact from the evidence adduced at trial:

> Between December 1985 and March 1986 anonymous accusatory letters and crude, insulting greeting cards were sent to George Lubanski, Cheryl Beatty and Mark Baldyga, plaintiff's brother, both at work and at home. Diane Baldyga Jakobowski, Mark Baldyga, and the defendants also received numerous harassing phone calls at home during this time. "Prank" messages and animal sounds were being transmitted from outside the work site to radios in the plant used to monitor the company trucks on the road....
>
> Mr. Lubanski, married to Donna Lubanski at the time, had been accused, in these anonymous letters of having an extra-marital affair with the now Mrs. Lubanski, Cheryl Beatty. This, and the other harassing notes, letters and calls, coupled with a change in the plaintiffs' attitude towards him, caused Mr. Lubanksi to electronically eavesdrop on the plaintiffs to see if they were the source of the letters and the calls.
>
> Mr. Lubanski admitted to eavesdropping on and recording these conversations and sharing these tapes with Donna Lubanski.
>
> Ms. Beatty also listened to the plaintiffs' conversations and repeated parts of these conversations to co-worker, Gina Ritchie.
>
> The receiver was planted in the wall on or about February 13, 1986 and removed on or about March 24, 1986; it was in place for a total of thirty-nine days. When the eavesdropping devices were discovered, plaintiff Jane Brzys felt as if she had been raped. She reported no specific physical nor psychological injury resulting from the discovery....
>
> The Court finds that, other than one reference to Ms. Brzys's [sic] weekend illness, the intent of the defendants was to discover whether or not these plaintiffs were calling and writing to them and not to embarrass the plaintiffs nor discredit them.
>
> The Court finds that the plaintiffs were already suffering emotional traumas at work due to the anonymous calls and letters and that the plaintiffs have failed to sustain their burden of proving the eavesdropping alone created or exacerbated this condition. No actual damages were established.

The State Court found that both defendants, Lubanski and Beatty, violated Mass.Gen. Laws Ann. ch. 272, § 99[3], by intercepting private conversations.

---

1. Brzys and the Debtor were both employees of Westfield Municipal Gas & Electric Co.

2. The "Findings and Order" entered judgment as follows:

   Count I—Judgment for plaintiffs ($3,900 plus interest, costs and attorney's fees) against George Lubanski.
   Counts II, V—Waived by plaintiffs.
   Count IV—Judgment for plaintiffs ($3,900 plus interest, costs and attorney's fees) against Cheryl Beatty.
   Counts VII, VIII—dismissed by Superior Court.
   Counts III, VI, IX, X, XI, XII, XIII, XIV—Judgment for defendant.

3. Massachusetts General Laws, chapter 272, § 99 provides in pertinent part:

   Any aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section or whose personal or property interests or privacy were violated by means of an interception except as permitted or authorized by

On January 4, 1993, the State Court issued an execution in favor of the State Court Plaintiffs against the Debtor. On February 7, 1994, the State Court Plaintiffs levied on the execution and seized all right, title and interest in the Debtor's real estate located at 300 City View Boulevard, Westfield, Massachusetts.

Approximately three months later, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 4, 1994. In Schedule "D" of his petition, the Debtor lists the Plaintiff as a secured creditor holding an execution, arising from the Judgment, in the amount of $10,240.49 against the Debtor's real estate.

On August 17, 1994, the Plaintiff filed the above-captioned adversary proceeding. The Debtor filed a motion for summary judgment on December 29, 1994. The Plaintiff filed an opposition thereto and a cross-motion for summary judgment. After a hearing, the Court took the matter under advisement.

## III. *ARGUMENTS*

Through his motion for summary judgment, the Debtor argues that the Plaintiff's debt does not arise from a willful and malicious injury under § 523(a)(6). First, the Debtor asserts that, for the purposes of § 523(a)(6), "willful and malicious" means a deliberate or intentional act that necessarily leads to an injury. The Debtor argues that there was no willfulness proved as evidenced by the State Court's findings that the Debtor did not intend to embarrass or discredit the Plaintiff. The Debtor further argues that there was no injury as evidenced by the State Court's findings that no actual damages were established.

Second, the Debtor rejects the Plaintiff's argument that a judgment based on Mass. Gen.Laws Ann. ch. 272, § 99 constitutes, as a

matter of law, a nondischargeable debt under § 523(a)(6). The Debtor argues that the Judgment should not be given collateral estoppel effect in the instant action because the standards used in the State Court Action did not require the measure of culpability necessary to support a finding of willful and malicious injury under § 523(a)(6).

Third, the Debtor argues that the liquidated damages awarded by the State Court were statutory damages and bore no relation to any injury suffered by the plaintiffs. Therefore, liquidated damages do not satisfy the "injury" requirement under § 523(a)(6).

The Plaintiff also makes several arguments. First, the Plaintiff argues that the Debtor's actions satisfy the legal definitions of "willful" and "malicious" under applicable case law. Second, the Plaintiff rejects the Debtor's argument that nondischargeability under § 523(a)(6) requires a showing of actual harm. Relying on the reasoning set forth in the decisions of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) and *Kuchinsky v. Trudeau (In re Trudeau)*, 35 B.R. 185 (Bankr.D.Mass.1983), the Plaintiff maintains that the term "injury" is broadly defined as a "wrong done to another", and, therefore, does not rely on actual or proven damages. Third, the Plaintiff argues that the principle of collateral estoppel bars the Debtor from relitigating the issue of whether the Plaintiff was "willfully and maliciously injured" within the meaning of § 523(a)(6).

## IV. *DISCUSSION*

Rule 56(c) of the Federal Rules of Civil Procedure, applicable to adversary proceedings pursuant to Bankruptcy Rule 7056, provides that a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

this section shall have a civil cause of action against any person who so intercepts, discloses or uses such communications or who so violates his personal, property or privacy interest, and shall be entitled to recover from any such person—

1. actual damages but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1000, whichever is higher;

2. punitive damages; and
3. a reasonable attorney's fees and other litigation disbursements reasonably incurred. Good faith reliance on a warrant issued under this section shall constitute a complete defense to an action brought under this paragraph.

Mass.Gen.Laws Ann. ch. 272, § 99 (West 1990).

any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." *See* Fed.R.Bank.P. 7056(c). If the Court determines that the findings of the State Court should be given collateral estoppel effect, there are no genuine issues of material fact in the instant case. Therefore, the Court must examine (1) the elements of a nondischargeability claim under § 523(a)(6), (2) the findings of the State Court, and (3) the applicability of the collateral estoppel doctrine to the instant dischargeability proceeding.

### A. Section 523(a)(6)

█ Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). The term "willful" means deliberate or intentional. S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in,* 1978 U.S.C.C.A.N. 5787, 5865; H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320, 6321. Courts have adhered to this definition of "willful" in determining whether a debt is nondischargeable under § 523(a)(6). *See e.g., Knight Kitchen Music v. Pineau (In re Pineau),* 149 B.R. 239 (D.Me.1993); *Madden v. Fate (In re Fate),* 100 B.R. 141, 143 (Bankr.D.Mass. 1989). To satisfy the willfulness requirement, the plaintiff must at least prove intent to do an act that necessarily leads to injury. *Fate,* 100 B.R. at 143.

█ In defining the term "malicious", courts have been less consistent. The legislative history is the source of the split of bankruptcy decisions construing the term "malicious" under § 523(a)(6):

[Section 523(a)(6)] excepts for willful and malicious injury by the Debtor to another person or to the property of another person. Under this paragraph willful means deliberate or intentional. To the extent

that *Tinker v. Colwell* [citation omitted] held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a reckless disregard standard, they are overruled.

S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in,* 1978 U.S.C.C.A.N. 5787, 5865; H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320, 6321. Whether Congress intended to overrule *Tinker*'s definition of the "willful" prong or the "malicious" prong of the test is the nub of the debate among several courts.

In the Supreme Court's decision of *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, one of the earliest decisions construing the dischargeability exception under the 1898 Bankruptcy Act [4], the debtor sought to discharge a civil judgment for "criminal conversation" or adulterous acts by the Debtor with the plaintiff's spouse. In determining that the judgment was nondischargeable, the *Tinker* Court held:

a willful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.

*Id.* at 487, 24 S.Ct. at 509. The *Tinker* court also stated:

There may be cases where the act has been performed without any particular malice towards the husband, but we are of opinion that, within the meaning of the exception, it is not necessary that there should be this particular, and, so to speak, personal malevolence toward the husband, but that the act itself necessarily implies the degree of malice which is sufficient to bring the case within the exception stated in the statute. The act is willful, of course, in the sense that it is intentional and vol-

---

4. Section 17(2) of the Bankruptcy Act of 1898 provided:

a discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as
. . .
   (2) are judgments in actions for frauds, or obtaining property by false pretenses or false

representations, or for wilful and malicious injuries to the person or property of another[.]

30 Stat. 550, c. 541, U.S.Comp.Stat.1901, p. 3428.

untary, and we think it is also malicious within the meaning of the statute.

*Id.* at 485, 24 S.Ct. at 508.

Post–*Tinker* courts interpreted the Supreme Court's decision to hold that (1) the term willful could include reckless disregard of a duty, and (2) constructive or implied malice was sufficient to establish malice, a showing of specific malice toward the victim not being required. *See generally, United Bank of Southgate v. Nelson,* 35 B.R. 766, 769 (D.N.D.Ill.1983).

Some courts have held that Congress intended to entirely overrule *Tinker,* including the "implied" or "constructive" malice prong of the dischargeability exception. Consequently, these courts have held that the term "malicious" requires proof of a specific intent to harm a creditor or creditor's property. *See e.g., Dorr, Bentley & Pecha, CPA's. P.C. v. Pasek (In re Pasek),* 983 F.2d 1524, 1527 (10th Cir.1993); *Hartley v. Jones (In re Hartley),* 869 F.2d 394, 395 (8th Cir.1989), *aff'd, on reh'g, en banc,* 874 F.2d 1254 (8th Cir.1989); *Moribondo v. Lane (In re Lane),* 76 B.R. 1016, 1023 (Bankr.E.D.Pa.1987); *Grand Piano & Furniture Co. v. Hodges (In re Hodges),* 4 B.R. 513, 516 (Bankr.W.D.Va. 1980).

Other courts believe that Congress only intended to overrule the application of the reckless disregard standard to the "willful" requirement and did not intend to alter *Tinker*'s standard of implied or constructive malice. *See generally, Southgate,* 35 B.R. 766. These courts have held that "willful and malicious" requires only that a debtor intentionally committed an act, without just cause or excuse, which necessarily produces an injury. *E.g., Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1228–29 (6th Cir.1991); *Transamerica Commercial Finance Corporation v. Littleton (In re Littleton),* 942 F.2d 551, 555 (9th Cir.1991); *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988); *Blackman v. Gaebler (In re Gaebler),* 88 B.R. 62, 65 (E.D.Pa.1988); *Littlefield v. McGuffey (In re McGuffey),* 145 B.R. 582 (Bankr.N.D.Ill. 1992). This view is consistent with policy considerations, namely, that "requiring proof that a debtor subjectively intended to harm a creditor's interests would impose a nearly insurmountable burden on a creditor seeking to have a debt declared nondischargeable under § 523(a)(6)." *McGuffey,* 145 B.R. at 586.

Several bankruptcy decisions in this District have espoused the standard of constructive or implied malice. *See Fate,* 100 B.R. 141 (Bankr.D.Mass.1989); *Materia v. Pereira (In re Pereira),* 44 B.R. 248 (Bankr. D.Mass.1984); *Trudeau,* 35 B.R. 185, 187 (Bankr.D.Mass.1983). These decisions together hold that term "malicious" means an act done in conscious disregard of one's duties. No special malice toward the creditor need be shown.

■ For the policy considerations stated in *McGuffey,* this Court finds the standard of constructive or implied malice to be the appropriate standard for defining the term "malicious" under § 523(a)(6) and will follow the majority view in this District that the term "willful and malicious" in § 523(a)(6) means an act intentionally committed, without just cause or excuse, in conscious disregard of one's duty and that necessarily produces an injury.

**B. Collateral Estoppel**

■ The doctrine of collateral estoppel provides that a factual issue which has been actually and necessarily litigated and finally determined in a prior action may not be relitigated in a subsequent proceeding. *Harb v. Toscano (In re Toscano),* 23 B.R. 736 (Bankr.D.Mass.1982). *See Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). There are four requirements before collateral estoppel will preclude relitigation of a factual issue in a subsequent proceeding: (1) the precise issue sought to be precluded was raised in a prior proceeding; (2) the issue was actually litigated; (3) the determination of the issue must have been essential to the final judgment in the prior proceeding; and (4) the party against whom estoppel is sought must have been fully represented in the prior action. *Kwiat v. Doucette,* 81 B.R. 184, 187 (D.Mass.1987); *Sack v. Friedlander (In re Friedlander),* 170 B.R. 472, 476 (Bankr. D.Mass.1994).

■ The Debtor claims that the elements necessary for application of the collateral estoppel doctrine have not been fully met in this case. He argues that the issue of whether his conduct was "willful and malicious" as defined in § 523(a)(6) of the Bankruptcy Code was not actually litigated or essential to a final judgment in the State Court Action. This Court disagrees.

The State Court found that the Debtor's actions violated ch. 272, § 99. The Debtor *intentionally* installed an eavesdropping device to monitor conversations by the Plaintiff. And, the Debtor *intentionally* recorded conversations with the eavesdropping device and shared the tapes with other persons. This Court is satisfied that the Debtor's conduct was deliberate or intentional for the purposes of the "willful" requirement under § 523(a)(6).

■ There is no "malice" element under ch. 272, § 99. *See generally Pine v. Rust,* 404 Mass. 411, 414, 535 N.E.2d 1247, 1249 (1989) ("To be actionable under [the civil remedy section] . . . an interception need not rise to the level of criminal conduct covered by the penal provisions of the law"). Yet the findings of the State Court satisfied the elements of the "malice" prong under § 523(a)(6). *Cf. Friedlander,* 170 B.R. 472. Concededly, the State Court found that "the intent of the defendants was to discover whether or not these plaintiffs were calling and writing to them and not to embarrass the plaintiffs nor discredit them." However, the Debtor's actions in (1) the installation of an eavesdropping device on the Plaintiff, (2) recording of personal conversations, and (3) sharing of recorded conversations with other persons, were committed with an unjustifiable disregard of the Debtor's duty to refrain from violating Brzys' right of privacy as protected by ch. 272 § 9. Simply, the Debtor's actions were a flagrant disregard of a statutory duty, and, as such, satisfied the standard of constructive or implied malice.

■ The final hurdle is the State Court's finding that (1) there was no evidence of injury other than the one reference to the Plaintiff's "weekend illness", and (2) there were no actual damages established. The Debtor argues that the liquidated damages upon which the judgment is based does not satisfy the "injury" requirement under § 523(a)(6). By implication, he argues that the award of liquidated damages constituted a "fine" or "penalty" that is dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(7). *See e.g., Caggiano v. City of Boston (In re Caggiano),* 34 B.R. 449, 450 (Bankr.D.Mass.1983) ("[A] fine . . . is dischargeable only if it relates to a 'pecuniary loss'; that is, compensation for monetary injury actually incurred."). The Plaintiff argues that the she did suffer an actual injury—that is, an invasion of her privacy. The issue then revolves around what the Massachusetts Legislature intended to achieve through the liquidated damages provision of the statute. The statute provides in part:

> Any aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section or whose personal or property interests or *privacy* were violated by means of an interception except as permitted or authorized by this section shall have a civil cause of action against any person who so intercepts, discloses or uses such communications or who so violates his personal, property or *privacy* interest, and shall be entitled to recover from any such person—
>
> 1. *actual damages* but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1000, whichever is higher;
>
> 2. *punitive damages;* and
>
> 3. a reasonable attorney's fees and other litigation disbursements reasonably incurred. Good faith reliance on a warrant issued under this section shall constitute a complete defense to an action brought under this paragraph.

Mass.Gen.Laws Ann. ch. 272, § 99 (West 1990) (emphasis supplied). Upon a close reading of the statute, the Court notes two interesting aspects of the civil remedies section.

First, the statute clearly distinguishes between "actual damages" *and* "punitive damages". The liquidated damages provision is categorized under the actual damages clause.

If the Massachusetts Legislature had intended the liquidated damages to be treated as punitive or noncompensatory damages, it would have categorized the liquidated damages under the punitive damages clause. This Court defers to the principle that "all words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous." *In re Wang Laboratories, Inc.*, 164 B.R. 401, 404 (Bankr.D.Mass.1994), *quoting, United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 752 (1st Cir.1985). The Massachusetts Legislature, in categorizing the liquidated damages provision under the actual damages clause, undoubtedly recognized the legal implications and/or distinctions between actual damages and punitive damages. Therefore, the Debtor's argument that the Judgment, based on an award of liquidated damages as opposed to proven damages, does not satisfy the "injury" element for § 523(a)(6) purposes does not necessarily coincide with the statutory framework of the remedies provision of the statute.

Second, the Debtor reads too much into the State Court findings. That court did *not* find that there was no injury. That Court found that no injury had been *established.* Massachusetts General Laws, chapter 272, § 99 was intended to provide a remedy for a violation of *privacy*. The word itself even appears twice in the statute. Black's Law Dictionary defines the "right of privacy" as:

> The right to be let alone; the right of a person to be free from unwarranted publicity; and right to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.

BLACK'S LAW DICTIONARY 1195 (6th ed. 1990). The Massachusetts legislature intended to provide a remedy for violation of an individual's "privacy" interest, but it was mindful of the difficulty in measuring or quantifying damages. Interpreting the statute, the Massachusetts Supreme Judicial Court has stated that "[a]lthough the privacy interests protected by the statute in question are real and significant, they are by their very nature lacking in clear definition and difficult to quantify. It is this ephemeral quality that has undoubtedly led the Legislature to grant statutory minimum damages without any proof of harm." *Pine v. Rust,* 404 Mass. at 418, 535 N.E.2d at 1251. The Massachusetts Legislature simplified the calculation of damages because of the conceptual difficulty of quantifying damages based on an injury to a "privacy" interest. The violation of an individual's right of privacy can not be said to be an act without injury. The Commonwealth of Massachusetts has determined to protect that right and deem its violation to be an injury, without any more being proven. This court is neither authorized nor inclined to argue.

█ When the State Court found that no actual damages arising from physical or psychological injury *were established,* it awarded the Plaintiff statutory liquidated damages based upon the Debtor's violation of the statute for thirty-nine (39) days. This award furthered the goal of the statute to compensate Brzys for an injury that existed but could not be proven. An injury under § 523(a)(6) is not limited to bodily injury or physical abuse. *McGuffey,* 145 B.R. at 592; *Hardin v. Caldwell (In re Caldwell),* 60 B.R. 214, 217 (Bankr.E.D.Tenn.1986); *McGovern v. Capparelli (In re Capparelli),* 33 B.R. 360 (Bankr.S.D.N.Y.1983). The Court is satisfied that, for the purposes of § 523(a)(6), the damages awarded by the State Court were designed to remedy an actual injury.

█ This Court finds that the elements of collateral estoppel have been met. First, this Court has determined that the Debtor's act of installing an illegal eavesdropping device on the Plaintiff, in violation of ch. 272, § 99, rose to the level of a "willful and malicious injury" for the purposes of § 523(a)(6). The precise issue raised in the State Court Action was whether the Debtor's actions violated ch. 272, § 99. Therefore, there *is* an identity of issues. Second, the State Court actually held a trial on the merits, issued findings and entered judgment in favor of the Plaintiff. Third, the issue of whether the Debtor's act of installing an illegal eavesdropping device on the Plaintiff violated ch. 272, § 99 was essential to the State Court

Judgment. Finally, the Debtor appears to have been represented by counsel[5] in the State Court Action.

In view of the foregoing, the Court finds that the debt arising from the judgment based on the Debtor's violation of Mass.Gen. Laws Ann. ch. 272, § 99 is nondischargeable under § 523(a)(6).

## V. CONCLUSION

The Court hereby grants Plaintiff's Cross Motion for Summary Judgment and determines the State Court Judgment to be nondischargeable, pursuant to § 523(a)(6).

---

**5.** The State Court findings were rendered after a trial on the merits. Neither party has suggested that the Debtor was not represented by counsel.