In re Joseph A. BOTTONE, Debtor.

Shirley SMALL, Plaintiff,

v.

Joseph A. BOTTONE, Defendant.

Bankruptcy No. 95–45480–HJB.
Adversary No. 96–4081.

United States Bankruptcy Court,
D. Massachusetts.

June 9, 1997.

Peter Stern, Springfield, MA, for Plaintiff.

Gerald Glasser, Springfield, Ma, for Debtor.

David J. Noonan, Springfield, MA, Chapter 7 Trustee.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is a "Motion for Summary Judgment" (the "Motion") filed by defendant and debtor Joseph A. Bottone (the "Debtor"), seeking judgment in his favor on all counts of this adversary proceeding filed by plaintiff Shirley Small (the "Plaintiff" or "Small"). By virtue of the adversary proceeding, Small requests that the Court deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and/or determine that Small's claim is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6).

I. *Facts*

The following facts are not materially disputed.

The Debtor was the president of Bottone Home Inspections, a division of Bottone Remodelers, Incorporated, and was in the business of conducting inspections for prospective home buyers. In July 1992, Small became interested in purchasing a house located in Somers, Connecticut (the "Somers Property"), and contracted with the Debtor to inspect the home. The Debtor conducted the inspection on July 14, 1992. He subsequently issued a written report (the "Report") which recited, in relevant part:

> There are two different aged shingles on the roof; the older being over the addition at the rear of the garage.... All of the shingles are in good condition and free of any damage at this time. I also found that the ridge caps have been installed in the correct manner at the upper portion of the roof to seal these areas from moisture and are free of any cuts or openings....
>
> ....
>
> I found the gutters and downspouts to be in good condition, securely fastened to the fascias and properly pitched to provide good drainage....

Report at 1. In the Report, the Debtor further described the roof ventilation to be "good," *id.,* and concluded that the house was "both structurally and mechanically sound," *id.* at 6.

Sometime after the Debtor reported his findings to her, Small purchased the Somers Property. However, Small subsequently complained of various flaws in the Report, as described in the following relevant parts of a January 15, 1993 demand letter sent by Plaintiff's former attorney to the Debtor in accordance with Mass. Gen. Laws Ann. ch. 93A, § 9 (West 1984 & Supp.1997):

> In July of 1992 my clients were in the process of attempting to purchase [the Somers Property]. At that time you were hired to conduct a structural inspection of the premises. You represented to my clients that you were experienced, reliable, thorough and that your inspection would reflect these values....
>
> ....
>
> Relying upon the results of your inspection my clients completed the purchase of the premises. A short time later, due to a persistent odor in the vicinity of the family room, [the Plaintiff] had occasion to have further inspection performed on the premises. It was determined that the family room was constructed with no ventilation in the crawl space foundation and that it was not built according to code. It was not even constructed according to standard building practices. There were no vents in the attic area of this room. The floor joists and wall structures were both soaking wet from moisture, as well as being totally infested with carpenter ants. The ceiling in this room had approximately two and ½ inches sag within three feet, as measured from the garage wall to the side of the first door. There were no drip edge on the trim and no end caps or down spouts on the gutter system. Headers and skylights were improperly installed and, in fact, the skylights were not manufactured for that purpose, but were sliding doors that had been boxed-in on the roof. There were numerous other problems not as amenable to visual inspection which were found when the room was opened up.
>
> Effectively this room has to be torn down and rebuilt due to the damage caused by rot and infestation.

Demand Letter at 2.[1]

In May 1993, Small filed suit against Bottone Remodelers, Inc. in the Hampden Divi-

---

1. Under Chapter 93A, § 2:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
>
> (b) It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1)

of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended.

Mass. Gen. Laws Ann. ch. 93A, § 2 (West 1984).

Section 9(1) of Chapter 93A provides that a consumer "who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder ... may bring an action...." Section 9(3) of Chapter 93A requires that, at least thirty days

sion of the Commonwealth of Massachusetts Superior Court Department of the Trial Court (the "Massachusetts Superior Court") (the "State Court Action"), and amended the complaint in May 1994 to include the Debtor individually.[2] In her state court complaint, Small alleged that the Debtor knowingly and willfully misrepresented the condition of the Somers Property in his Report, and in so doing, violated M.G.L. ch. 93A.

On March 18, 1994, the Debtor executed a declaration of homestead, pursuant to M.G.L. ch. 188, § 1, on his principal residence located at 27 Stonegate Circle, Wilbraham, Massachusetts (the "Wilbraham Property") and owned jointly with his wife Deborah A. Bottone ("Mrs. Bottone"). The declaration of homestead was recorded in the Commonwealth of Massachusetts Hampden County Registry of Deeds (the "Hampden Registry") on March 24, 1994. On April 18, 1994, the Debtor conveyed all of his interest in the Wilbraham property to Mrs. Bottone by warranty deed recorded in the Hampden Registry on April 22, 1994. The deed also provided that Mrs. Bottone "declare[d] all rights of homestead in said premises under the provisions of Chapter 188, Section 1 of the General Laws of Massachusetts."

The Plaintiff eventually obtained a default judgment against the Debtor in the State Court Action, although the state court did not assess the damages owed to the Plaintiff.[3] On November 30, 1995, the Debtor filed a petition in this Court under Chapter 7 of the Bankruptcy Code. He listed the Wilbraham Property as his street address, but reported in Schedule A of his Schedules Of Assets and Liabilities that he did not own any interest in real property.

The Plaintiff commenced this adversary proceeding on March 11, 1996, seeking denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4). On July 11, 1996, she moved for leave to file an amended complaint, adding counts under § 523(a)(2)(A) and § 523(a)(2)(B). That motion was allowed by the Court on July 23, 1996.

The Debtor filed the instant Motion on November 4, 1996, seeking summary judgment in his favor. On November 21, 1996, the Plaintiff filed yet another amended complaint, this time listing counts under 11 U.S.C. §§ 727(a)(2), 523(a)(2)(A), and 523(a)(6), apparently intended to supersede the counts of the original complaint and the July 11, 1996 amendment.[4] After hearing the parties on the Motion, the Court took the matter under advisement. On March 24, 1997, former counsel for the Debtor filed a "Notice of Disappearance,"[5] and new counsel filed an "Appearance" on the Debtor's behalf.

---

prior to the filing of an action, a claimant under the chapter deliver a written demand for relief to the respondent "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." If the claimant prevails in a civil action under § 9(3),

> recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.

Id. § 9(3).

2. Neither party has alleged whether the Debtor responded to the demand letter, or stated the contents of any such response.

3. The pleadings before the Court do not reveal the date of the default judgment.

4. The Plaintiff's November 21, 1996 amended complaint does not comply with Federal Rule of Civil Procedure ("FRCP") 15(a), made applicable to adversary proceedings under Federal Rule of Bankruptcy Procedure 7015. Under FRCP 15(a), a party may amend a pleading of the type to which a response is permitted as a matter of course at any time prior to service of a responsive pleading by the other party. After that time, amendment of such a pleading is allowed only by leave of the court or by written consent of the adverse party. However, at the hearing on the Motion, the Debtor's counsel assented to the addition of the § 523(a)(6) count. Therefore, this Court will treat the complaint as properly amended, so that the § 523(a)(6) count is before the Court. The § 523(a)(2)(B) and § 727(a)(4) counts raised in earlier versions of the complaint are deemed to have been waived.

5. Although "disappearance" may have been the stated goal, "withdrawal" is the better term and more consistent with well-recognized laws of physics.

## II. *Analysis*

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56(c); *Brzys v. Lubanski (In re Lubanski)*, 186 B.R. 160, 163–64 (Bankr.D.Mass.1995). The Court must resolve any disputed facts and inferences in favor of the party opposing summary judgment. *Fleet Nat'l Bank v. H & D Entertainment, Inc.*, 96 F.3d 532, 537 (1st Cir.1996); *Aero–Fastener, Inc. v. Sierracin Corp. (In re Aero–Fastener)*, 177 B.R. 120, 135 (Bankr.D.Mass.1994).

### A. Section 727(a)(2)

■ Section 727(a)(2) of title 11, U.S.Code, provides that a debtor shall be granted a bankruptcy discharge unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition[.]

"The burden of persuasion rests with the party ... opposing a discharge in bankruptcy under Bankruptcy Code § 727." *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 136 (1st Cir.1992).

### 1. Section 727(a)(2)(A)

The Debtor argues that Count I brought under § 727(a)(2) must fail because the April 1994 transfer of the Debtor's interest in the Wilbraham Property to Mrs. Bottone fell outside of the statutorily prescribed one year period set forth in § 727(a)(2)(A). The Debtor did not file an affidavit in support of his Motion. Attached to the Motion is only a certified copy of the April 18, 1994 deed from the Debtor and Mrs. Bottone, as grantors, to Mrs. Bottone, as grantee. At the hearing, counsel for the Debtor also filed a copy of the Debtor's declaration of homestead, dated March 18, 1994. While the absence of a supporting affidavit is often fatal to allowance of a motion for summary judgment or an opposition thereto, *see, e.g., Aero–Fastener*, 177 B.R. at 135, the Debtor argues in the Motion that even if the Plaintiff's allegations were all true, she could not prevail as a matter of law.

In her opposition, the Plaintiff argues that genuine issues of material fact exist with respect to the § 727(a)(2)(A) count, supported by the "doctrine of continuing concealment." The Plaintiff's affidavit presents no facts which relate in any way to the § 727(a)(2) issue. However, the deed conveying the Debtor's interest in the Wilbraham Property to Mrs. Bottone recites "no monetary consideration" for the subject transfer. Further, the Debtor admitted in his Answer to the Plaintiff's Amended Complaint that (a) he had previously testified under oath to owning the Wilbraham Property jointly with Mrs. Bottone for 28 years "until he transferred his interest to his wife, subsequent to the filing of [the] Plaintiff's action"; and (b) he continues to reside at the Wilbraham Property with Mrs. Bottone. Amended Complaint ¶¶ 5, 6; Answer to Amended Complaint ¶ 1.

With the slim record provided by the parties, the Court is presented with two issues to consider. First, if legal title to a debtor's asset is transferred prior to one (1) year before the filing of a bankruptcy petition, may the intentional concealment from creditors of a secret beneficial interest in that asset within the year prior to the filing of the petition serve as a basis for the denial of the debtor's discharge under § 727(a)(2)(A)? Second, if resolution of the foregoing question would not preclude a § 727(a)(2)(A) action as a matter of law, are the pleadings and submissions referenced above sufficient to demonstrate a genuine issue of material fact with respect to the Plaintiff's claim under § 727(a)(2)(A)?

■ Section 727(a)(2)(A) "consists of two components: an act (i.e. a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor). The party seeking to bar discharge must prove that *both* of these components were present during the one year period before bankruptcy...." *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993). In order to prevail on the Motion, the Debtor must establish that even if the facts are viewed in the light most favorable to the Plaintiff, he did not within one year prior to the filing of the petition in this case commit an act or have the type of intent described in § 727(a)(2)(A).

■ "Concealment" is "[a] withholding of something which one knows and which one, in duty, is bound to reveal...." BLACK'S LAW DICTIONARY 289 (6th ed.1990). The Plaintiff urges the Court to rely on the "doctrine of continuous concealment" in order to relate the transfer of the Wilbraham Property effected more than one year prior to the filing of the petition to the relevant statutory period under § 727(a)(2)(A). Under the "doctrine of continuous concealment," a debtor may be denied a discharge, notwithstanding the time of the debtor's transfer or original concealment of his or her interest in property, if it is established that the debtor continued to conceal that interest from creditors during the year prior to the petition filing. *Rosen,* 996 F.2d at 1531–32.[6] "The doctrine does not negate the 'act' requirement of § 727 but merely recognizes that a failure to reveal property previously concealed can, in some circumstances, properly be considered culpable conduct during the year before bankruptcy warranting a denial of discharge." *Id.* at 1531.

■ This Court must confess some lack of reverence for that "doctrine." The statute requires that both the relevant act and the intent *must* be found within the year before the filing of the petition. Therefore, concealment must be proved within the year prior to case commencement. Of course, actions and intentions at earlier periods are relevant as circumstantial evidence to support findings of concealment during the statutorily prescribed one year period. But proof of the existence of the relevant act and the intent within the statutorily prescribed year is not excused because either existed at an earlier time.

■ By elevating circumstantial evidence to doctrinal status, one runs the risk of becoming distracted from the task of establishing the essential elements of a case under § 727(a)(2)(A). And, to the extent that the continuing concealment doctrine inordinately focuses the inquiry on a time prior to the one year period, it flies in the face of another longstanding doctrine grounded in profound policy considerations. Objections to discharge "are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy and the claimant must show that its claim comes squarely within an" objection enumerated in Bankruptcy Code § 727(a)(2). *Century 21 Balfour Real Estate v. Menna (In re Menna),* 16 F.3d 7, 9 (1st Cir.1994) (concerning exceptions to discharge under § 523(a)); *see also Bajgar,* 104 F.3d at 498 n. 1 (relating the policy stated in *Menna* to objections to discharge under § 727(a)(2)). The judicial creation of a doctrine which cannot be found in the Bankruptcy Code is hardly narrow construction. Nor is it necessary. As long as the concealment occurs

---

6. *See also Thibodeaux v. Olivier (In re Olivier),* 819 F.2d 550, 554–55 (5th Cir.1987); *Friedell v. Kauffman (In re Kauffman),* 675 F.2d 127, 128 (7th Cir.1981) (under substantively identical provision of the Bankruptcy Act of 1898); *Marine Midland Bank v. Portnoy (In re Portnoy),* 201 B.R. 685, 695–96 (Bankr.S.D.N.Y.1996); *Peerless Insurance Co. v. Benson (In re Benson),* 180 B.R. 28, 31 (Bankr.D.Conn.1995); *Congress Talcott Corp. v. Sicari (In re Sicari),* 187 B.R. 861, 875 (Bankr.S.D.N.Y.1994); *Cullen Center Bank & Trust v. Lightfoot (In re Lightfoot),* 152 B.R. 141, 146 (Bankr.S.D.Tex.1993); *Patton v. Hooper (In re Hooper),* 39 B.R. 324, 327 (Bankr.N.D.Ohio 1984). The continuous concealment doctrine is well-recognized in this District. *See Shamban v. O'Brien (In re O'Brien),* 190 B.R. 1, 4 (Bankr.D.Mass.1995); *Pelham Plate Glass, Inc. v. Charette (In re Charette),* 148 B.R. 94, 96 (Bankr.D.Mass.1992); *Nelson v. Peters (In re Peters),* 106 B.R. 1, 4–5 (Bankr.D.Mass.1989); *Cahillane v. MacDonald (In re MacDonald),* 101 B.R. 836, 844 (Bankr.D.Mass.1989), *rev'd,* 114 B.R. 326, 334–35 (D.Mass.1990); *see also Green v. Toy,* 171 F.2d 979, 979 (1st Cir.1949) (under Bankruptcy Act of 1898).

within the statutorily prescribed one-year period, the strict terms of § 727(a)(2)(A) are met. Evidence of an act of concealment and/or the intent to conceal occurring prior to the statutorily prescribed one year period is nothing more than one source of circumstantial evidence available to prove that the act of concealment and the intent to conceal occurred within the year prior to case commencement.

Of course, it can be very difficult to prove that a debtor has concealed a "secret" beneficial property interest after conveying legal title to property. As a result, courts have looked at the surrounding circumstances to determine whether there has been a concealment. In *Kauffman*, for instance, the court based its finding that the debtor concealed a secret property interest on the debtor's: (1) use of the property in question as collateral for several loans he undertook; (2) continued mortgage, tax, and insurance escrow payments on the property; and (3) personal financial statements, which listed the property as one of his assets. 675 F.2d at 128.[7]

■ Here, the Court has been hampered by the dearth of admitted or verified allegations upon which the Court can rely. Rule 56(c) of the Federal Rules of Civil Procedure, as made applicable by Fed. R. Bank. P. 7056, requires that summary judgment be granted on a demonstration by the moving party "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Debtor, here the moving party, has demonstrated little. He submits only the deed transferring legal title to the Wilbraham Property more than a year prior to the filing and the declaration of homestead dated a month previous thereto. Those documents are insufficient to carry the Motion. The question for the purposes of § 727(a)(2)(A) is not whether or when or to whom or for what consideration the *legal* title to the Wilbraham Property was transferred. The issue before the Court is whether, after the transfer and within a year prior to the filing, the Debtor concealed a *secret beneficial* interest in the property. As the U.S. Court of Appeals for the Third Circuit stated in *Rosen:*

> In a situation involving a transfer of title coupled with retention of the benefits of ownership, there may, indeed, be a concealment of property. Where this is the case, the concealment is present ... because the transfer of title represents to the world that the debtor has transferred away all his interest in the property while in reality he has retained some secret interest—a secret interest of which retention of the benefits of ownership may be evidence. A legally relevant concealment can exist, however, only if there is, in fact, some secret interest in the property retained by the debtor.

996 F.2d at 1532 (footnote omitted).

■ Similarly, evidence that the conveyance occurred at a time of creditor pressure and that the Debtor continued to live at the property post-transfer is insufficient for the Court to rule that, as matter of law, a beneficial interest in the property was retained by the Debtor. While transfer of the legal interest in the property may be "evidence tending to show that [the debtor] did retain a secret interest pursuant to an express or tacit agreement with his wife, such as a right to reconveyance on demand or a right to live in the house rent-free, ... [the debtor] might be living there at his wife's sufferance and be subject to eviction at will." *Id.* at 1532. This Court is unwilling to rule that conveyances between spouses who live together always include the retention of a secret beneficial interest by the grantor. Therefore, genuine issues of material fact remain on both sides. *See id. at* 1532 n. 5

---

7. *See also Olivier,* 819 F.2d at 551 (debtors continued to live in and maintain house, paid property insurance, and did not pay rent to transferee); *Sicari,* 187 B.R. at 877 (where subject real estate was rental property, a lease was drawn up on debtor's letterhead and referred to him and his wife as the landlords; for approximately two years after property was transferred, debtor still instructed that rent checks be payable to him- self); *Lightfoot,* 152 B.R. at 145 (where asset at issue was a sailboat which debtor transferred to his wife, court noted that "no one sails the boat without the debtor at the helm"); *Charette,* 148 B.R. at 96 (after transferring legal title to daughter-in-law, debtors continued to pay mortgage payments and taxes, mowed the lawn, and kept the utility bills in their names).

("While 'retention of the benefits of ownership' on the part of the debtor may support an inference and a factual finding that the debtor retained a secret interest in the property, such an inference is inappropriate on a motion for summary judgment."); *Benson,* 180 B.R. at 31 (where debtor did not furnish court with material "from which it could conclude indisputably that [he] did not retain certain attributes of beneficial ownership following the alleged property transfers and within the one-year reach-back period of Section 727(a)(2)(A)," debtor's motion for summary judgment was denied); *see also Hooper,* 39 B.R. at 327 ("the bare proof of debtors continuing to live on the property that they transferred to their son, without more, is insufficient to constitute a 'continuing concealment' ").[8]

Finally, the Debtor argues that his recording of a declaration of homestead, prior to a money judgment being issued in the Plaintiff's state court tort action[9] (presumably shielding the equity in the property), requires that the Court rule that he could not have had the intent to hinder, delay, or defraud creditors when the Debtor conveyed his interest to Mrs. Bottone one month later. First, the Court notes again that attention is misfocussed on the wrong period and the wrong property interest. The Debtor's intent in conveying legal title to the property more than a year before the bankruptcy filing is not determinative of whether the Debtor intended to "hinder, delay or defraud a creditor ... within a year before the date of the filing of the petition," although it may be relevant to that issue.

Second, this Court could not, in any event, make a summary judgment ruling with respect to the Debtor's intent in recording his declaration of homestead. Issues of intent can rarely be resolved on summary judgment. Further, the Debtor made no verified averment as to the value of the property or its equity, and, curiously, the Debtor does not explain why he conveyed the property to his wife one month after the declaration of homestead if he believed that the homestead fully protected the equity in the Wilbraham Property. Clearly, there are a myriad of genuine issues of material fact that surround the Debtor's intent during the period of his declaration of homestead and the subsequent transfer of the property.

### 2. Section 727(a)(2)(B)

The Debtor's Motion (and Plaintiff's Affidavit) ignore the appearance of § 727(a)(2)(B) in § 727(a)(2). Section 727(a)(2)(B) is focused on the postpetition period, i.e., on the property of the estate. The Debtor argued in the Motion and at the hearing that the only event which should be analyzed in connection with § 727(a)(2) was the 1994 transfer of the Debtor's legal title to the Wilbraham property. As the Court has rejected this contention, it is clear that the Court must also consider whether there was a concealment of a retained property interest after case commencement. Since the Debtor has not even addressed the issue, summary judgment in his favor is not possible.

### B. Section 523(a)(2)(A)

11 U.S.C. § 523(a)(2)(A) provides that a debtor shall not be discharged from

---

**8.** The Debtor argues that the transfer to Mrs. Bottone was not "concealed" because it was disclosed to the Plaintiff at a prepetition deposition, in addition to having been recorded in the Hampden Registry. However, "[w]hat is critical under the concealment provision of § 727(a) is whether there is concealment of *property,* not whether there is concealment of a transfer." *Rosen,* 996 F.2d at 1532; *see also Kauffman,* 675 F.2d at 128 (concealment does not mean "literally concealed"); *Portnoy,* 201 B.R. at 696 ("the relevant inquiry for establishing a concealment under section 727(a)(2) is whether the debtor concealed his property and not whether the debtor concealed a previous transfer made outside the one year period before bankruptcy"); *Charette,* 148 B.R. at 96. *But see MacDonald,* 114

B.R. at 334–35 (U.S. District Court for the District of Massachusetts held that where debtor's control of corporation and his father's ownership of the corporation's stock were fully revealed, there was no concealment, and thus reversed the bankruptcy court's denial of the debtor's discharge); *Bartlett Bank & Trust Co. v. Wolmer (In re Wolmer),* 57 B.R. 128, 132 (Bankr.N.D.Ill. 1986) (awarding discharge despite a § 727(a)(2)(A) challenge because "the transaction [was] revealed at the first meeting of creditors").

**9.** *See In re Miller,* 113 B.R. 98, 103–04 (Bankr. D.Mass.1990).

any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In the Motion, the Debtor states as follows:

[The Debtor's] corporation . . . obtained money from Plaintiff Small for providing home inspection services, and . . . [the] Debtor (or his corporation) would have receive [sic] the same fee whether or not the ultimate inspection report contained false statements. . . . Under these circumstances, it cannot be said that [the] Debtor (or his corporation) obtained money by use of the alleged false report since the money was to be paid regardless of the truthfulness of the inspection report.

Motion at 2. In essence, the Debtor is arguing that the alleged fraud here does not "squarely fit" into § 523(a)(2)(A) because the Debtor did not use false pretenses, a false representation, or actual fraud in order to obtain a "debt" for money, property, or services.

Following the Debtor's argument, the only misrepresentations that would lead to debts being declared nondischargeable under § 523(a)(2)(A) would be those employed to induce a creditor to either loan money or property to a debtor, or to provide services in advance of payment therefor. Debts constituting injuries arising from the debtors' fraudulent acts in providing goods or services could not be excepted from discharge under § 523(a)(2)(A).

However, this argument must be rejected, based on a recent First Circuit decision. In *Printy v. Dean Witter Reynolds*, 110 F.3d 853, 857 (1st Cir.1997), that debtor argued that a debt based on a judgment against him for fraudulent conduct could not be excepted from discharge under § 523(a)(6), only § 523(a)(2)(A). As with the case at hand, *Printy* did not involve fraud in connection with the obtaining of credit. Faced with the argument that only § 523(a)(2)(A) could apply, the First Circuit held that "sections 523(a)(2)(A) and (a)(6) are not mutually exclusive." *Id.* at 858. Implicit in the First

Circuit's reasoning was that the reverse could be true; namely, that a claim based on fraud other than in connection with a credit transaction could be brought under § 523(a)(2)(A). Numerous other courts have recognized that similar debts based on fraud can be excepted from discharge under § 523(a)(2)(A). *See, e.g., Lee–Benner v. Gergely (In re Gergely)*, 110 F.3d 1448, 1453 (9th Cir.1997); *Stokes v. Ferris (In re Stokes)*, 150 B.R. 388, 391 (W.D.Tex.1992), *aff'd*, 995 F.2d 76 (5th Cir.1993); *Casey v. Transport Life Ins. Co. (In re Dorsey)*, 162 B.R. 150, 155–56 (Bankr.N.D.Ill.1993); *Corsi v. Berman (In re Berman)*, 154 B.R. 991, 1001–03 (Bankr.S.D.Fla.1993); *Goins v. Day (In re Day)*, 137 B.R. 335, 340 (Bankr. W.D.Mo.1992); *Bear, Stearns & Co. v. Powell (In re Powell)*, 95 B.R. 236, 239 (Bankr. S.D.Fla.), *aff'd*, 108 B.R. 343 (S.D.Fla.1989), *aff'd*, 914 F.2d 268 (11th Cir.1990). Accordingly, allowance of the Motion relative to the § 523(a)(2)(A) count would not be appropriate.

**C. Section 523(a)(6)**

 Under 11 U.S.C. § 523(a)(6), any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge. In the First Circuit's recent *Printy* decision, the First Circuit adopted this Court's definition of the term "willful and malicious" under § 523(a)(6) to mean "an act intentionally committed, without just cause or excuse, in conscious disregard of one's duty and that necessarily produces an injury." 110 F.3d at 859 (adopted from *Lubanski*, 186 B.R. at 165, in turn constituting a compilation of various decisions of the bankruptcy courts of this District). However, the *Printy* court refined the definition, noting that the Debtor must act " 'either with the intent to cause the harm complained of, or in circumstances in which the harm was certain or almost certain to result from the debtor's act.' " *Printy*, 110 F.3d at 859 (quoting 4 *Collier on Bankruptcy* ¶ 523.12[2], at 523–89 (15th ed. rev.1996)).

At the hearing on the Motion, then-counsel for the Debtor argued that even with the facts viewed in the light most favorable to the Plaintiff, the Debtor's behavior was, at

266

most, reckless, not malicious. Hearing Transcript at 6–7. However, the Court disagrees. The facts set forth in the Plaintiff's affidavit (viewed with a bias to the Plaintiff) may support findings that (1) the Debtor intentionally made misrepresentations regarding the condition of the Somers property in his inspection report; (2) in conscious disregard of his duties as an inspector; (3) which misrepresentations induced the Plaintiff to buy the house; and (4) the injury suffered by the Plaintiff was "almost certain to result from the debtor's" misrepresentations. If proven at trial, those facts might fit within the standard espoused in *Printy*. In any event, there are, at the very least, genuine issues of material fact precluding the granting of summary judgment to the Debtor under the § 523(a)(6) count.

### III. *Conclusion*

For the foregoing reasons, the Court denies the Motion with respect to all three counts of the Plaintiff's complaint, brought under §§ 727(a)(2)(A), 523(a)(2)(A) and 523(a)(6).

A separate order shall enter in conformity herewith.