In re William J. O'BRIEN, Debtor.

Stephen E. SHAMBAN, Trustee, Plaintiff,

v.

William J. O'BRIEN, Mary C. O'Brien, Trustee of Thomas Street Real Estate Trust and M.C.O. Realty Trust, Defendants.

PLYMOUTH SAVINGS BANK, Plaintiff,

v.

William J. O'BRIEN, Defendant.

Bankruptcy No. 94–13776–WCH.
Adv. Nos. 94–1755, 94–1756.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 16, 1995.

Frederick J. Watson, Stephen E. Shamban Law Offices, P.C., Braintree, Mass., for trustee.

William G. Billingham, Marshfield, Mass., for William and Mary O'Brien.

James P. Devlin, Assiran, Ellis & Devlin, Taunton, Mass., for Plymouth Savings Bank.

## DECISION

**WILLIAM C. HILLMAN**, Bankruptcy Judge.

### I. Introduction

William J. O'Brien ("William") filed his Chapter 7 petition on June 6, 1994. Stephen E. Shamban ("Trustee") was appointed as trustee. William is married to Mary C. O'Brien ("Mary"), who is not a debtor. Mary is trustee and beneficiary of the M.C.O. Realty Trust ("MCO"). Plymouth Savings Bank (the "Bank") is the plaintiff in the second adversary proceeding. This decision relates to the two captioned adversary proceedings, which were consolidated for trial. The following discussion constitutes my findings of fact and conclusions of law.

### II. Background

In 1982 Debtor and his mother, whose name is also Mary C. O'Brien ("Mother"), purchased a single family home located at 18 Brook Street, Kingston, Massachusetts ("Brook Street"). In approximately 1989, Mother conveyed her interest to Mary. Thereafter, William and Mary extensively renovated Brook Street prior to adopting the premises as their residence in July of 1991.

Until April 17, 1991, title to Brook Street remained in the names of William and Mary. On that date, at Mary's suggestion, they conveyed Brook Street to Mary as trustee of MCO for a stated consideration of $1.00. No consideration was in fact paid. MCO had been created for the sole purpose of taking title to Brook Street. While all of the renovations were not complete at the time of transfer, William testified that the value of Brook Street was then $225,000 (on cross examination he stated a range of $175,000—$225,000). It was unencumbered.

Mary left the marital home in June 1992 and returned in June 1994; William remained in residence and has used the home as his own for all of the period. William and Mary presently live together at Brook Street.

Both William and Mary testified that nothing changed as a result of the transfer into the trust. The renovations continued to be made as before. Utility service remained in William's name.

At the time of the transfer of Brook Street to MCO, Dome Realty Trust ("Dome"), an entity whose loan to the Bank William had guaranteed, was in default in its obligations to the Bank. William and Mary knew at the time of the transfer that the Dome loan was in difficulty. William himself did not have the ability to make the Dome loan payments or to cure the default. He and his associates had been talking to the Bank with regard to "renegotiating" the loan but "it never happened." He and Mary knew at the time of the transfer that the Bank might pursue William's interest in Brook Street. Both William and Mary testified that they conveyed Brook Street into MCO "to protect it from creditors."

William testified that he did not list Brook Street as an asset when he filed his petition in the principal case "because I don't own it".

Mary made loans to William totaling $23,433 so that he could make payments to the Bank on the Dome loan and $3,000 to purchase certain property in Plymouth, Massachusetts ("the Plymouth Property"). She obtained that money from her rental property at 28 Main Street, Kingston, which she inherited from her grandfather in 1984. The checks in evidence came from a joint account, but Mary testified without contradiction that they represented her own funds.

Mary supervised the renovations to Brook Street, performed many of them herself, and advanced $25,720 of her own funds toward the renovations, which payments were in addition to the $26,433 mentioned above. William's contention is that the transfer to MCO was in consideration of those advances, and that the statement of nominal consideration on the deed was incorrect—a scrivener's error.

Other than checks, however, these advances were not represented by any written or oral agreement. Rather, William testified that "she probably didn't think she was going to get it back anyway." He said his wife would be repaid "someday if I could, proba-

bly."[1] He also testified that the transfer was in a period of marital disharmony.

## III. Procedural History

The Trustee brought his adversary proceeding objecting to William's discharge and challenging alleged fraudulent transfers. The trustee alleges that the Debtor's transfer of his interest in Brook Street was fraudulent under Mass.Gen.L. ch. 109A, the Massachusetts Uniform Fraudulent Conveyance Act, and 11 U.S.C. § 548.[2] The trustee also objects to William's discharge based upon continuing concealment of the transfer of Brook Street pursuant to 11 U.S.C. § 727(a)(2).

The Bank brought its adversary proceeding objecting to Debtor's discharge pursuant to several subsections of 11 U.S.C. § 727. First, the Bank objects to his discharge because he transferred Brook Street for a nominal consideration. Second, the Bank alleges that William is not entitled to his discharge because of his concealment of his ownership of a vehicle and of the Plymouth Property. Third, the Bank challenges William's discharge because of the alleged undervaluation of his interest in Benea Block Corp. II ("Benea") which the Bank claims to be a false oath or account. Finally the Bank objects to William's discharge because of the failure to list Benea's note payable in his schedules.

## IV. Analysis

### A. Fraudulent Conveyance

■ Section 4 of the Massachusetts Uniform Fraudulent Conveyance Act, Mass.

Gen.L. ch. 109A ("UFCA"), defines a conveyance as fraudulent as to creditors without regard to actual intent if the conveyance is made by a person who is insolvent and is made without fair consideration.

I find as a fact that William was insolvent at the time that he conveyed his interest in Brook Street to Mary. He was, by his own admission, unable to satisfy the guaranty liability to the Bank. This satisfies the insolvency definition of UFCA § 2(1).[3]

I do not find credible the assertion that the conveyance was to reimburse Mary for advances she had made to William for various purposes, and for her investment in the rehabilitation of Brook Street, but that determination is not essential for my conclusion. The total sums involved did not constitute fair consideration for the transfer as the amount was not a fair equivalent exchange for the property and was disproportionately small as compared to the value of Brook Street.[4]

Even if William had not been insolvent at the time of the transfer, I find that the conveyance was made with actual intent to hinder his creditors; that is manifest both from his testimony and that of his wife, who proposed the transfer. Such a conveyance is fraudulent as to both present and future creditors under UFCA § 7.[5]

Having reached this conclusion, it is not necessary to consider whether the transfer of Brook Street was in violation of § 548 of the Bankruptcy Code.

---

1. I note that this testimony conflicts with William's prior statements that no consideration had been paid. Williams failed, except in response to questions by his own counsel, to indicate or intimate that he was repaying Mary by the transfer of Brook Street.

2. With the Trustee's agreement, I dismissed Count I of his complaint which contested the transfer of other property. The Bank agreed to dismissal of its similar Counts I and II.

3. "A person is insolvent within the meaning of this chapter when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Mass.Gen.L. ch. 109A § 2(1).

4. "Fair consideration is given for property or obligation—
   "(a) When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
   "(b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained...." Mass. Gen.L. ch. 109A § 3(a), (b).

5. "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." Gen.L. ch. 109A § 7.

**4**

### B. Denial of Discharge

 Both the Trustee and the Bank urge that William's discharge be denied because the transfer of Brook Street is an event to which 11 U.S.C. § 727(a)(2)(A) applies.[6] Because the transfer from William and Mary to MCO was actually more than three years before William filed his petition, however, there is no viable claim under the last cited statute unless the "continuous concealment" doctrine applies.

 That principle mandates denial of discharge when the debtor retains a secret interest in property which was transferred to another even outside of the one year period. The concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs in that year. Therefore, such concealment is within the reach of § 727(a)(2)(A). The generally cited case for this proposition is *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 554 (5th Cir.1987).

The doctrine has been recognized by the judges of this district. *See Pelham Plate Glass, Inc. v. Charette (In re Charette)*, 148 B.R. 94, 96 (Bankr.D.Mass.1992) (Judge Kenner) (title transfer with attendant circumstances indicating bankrupt continues using property as his own constitutes concealment); *In re MacDonald*, 114 B.R. 326, 334 (Bankr. D.Mass.1990) (Judge Queenan) (Estate included stock although debtor's father acquired legal title more than one year before petition). *See also Nelson v. Peters (In re Peters)*, 106 B.R. 1, 4 (Bankr.D.Mass.1989) (Judge Gabriel). I agree with the reasoning and holdings of those cases.

Not all concealments will justify denial of discharge. A debtor must *intend* to hinder, or delay, or defraud at least one creditor or an officer of the estate, and this intention must be actual. In the discussion of the fraudulent conveyance I found as a fact that William's transfer was with the requisite in-

tent, which is the same intention required to be found here, and I do so find.

William's discharge will be denied as mandated by § 727.

### Conclusion

Having determined that the transfer of Brook Street was a fraudulent transfer under the earlier counts of the complaints and that William's discharge should be denied, it is not necessary to continue with this opinion.

Counsel for the plaintiffs are directed to prepare appropriate order for each adversary proceeding in accordance with Local Rule 43(D)(1).

---

6. "(a) The court shall grant the debtor a discharge, unless—

    . . . .

    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title,

has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

    (A) property of the debtor, within one year before the date of the filing of the petition...."