In re Keith W. LANG, Debtor.

Annino, Draper & Moore, P.C.,
Plaintiff/Appellee,

v.

Keith W. Lang, Defendant/Appellant.

BAP No. MW 00–054.

United States Bankruptcy Appellate Panel
of the First Circuit.

Dec. 20, 2000.

Peter M. Stern, Springfield, MA, on brief for appellant.

Michael R. Siddall, Springfield, MA, Annino, Draper, Moore, P.C., on brief for appellee.

Before: GOODMAN, DE JESÚS, VAUGHN, U.S. Bankruptcy Judges.

**PER CURIAM.**

## I.  ISSUES ON APPEAL.

The bankruptcy court denied Keith W. Lang's (the "debtor") discharge pursuant to 11 U.S.C. § 727(a)(2)(A) on the grounds that he fraudulently transferred assets with the actual intent to hinder, delay and

defraud a creditor, Annino, Draper & Moore (herein "Annino" or the creditor). The debtor argues that the bankruptcy court improperly found that the debtor made the transfers with actual fraudulent intent.

## II. JURISDICTION.

■ The bankruptcy court's order denying the debtor's discharge is a final order. The bankruptcy appellate panel exercises jurisdiction pursuant to 11 U.S.C. § 158(a)(1) and § 159(b)(1).

## III. STANDARD OF REVIEW.

■ Findings of fact shall not be set aside unless clearly erroneous, and due regard should be given to the opportunity of the trial judge to determine the credibility of all witnesses. Fed.R.Bankr.P. 7052 and 8013. The determination that a debtor's intent was fraudulent pursuant to 11 U.S.C. § 727(a)(2)(A) is a finding of fact. When based primarily on the credibility and demeanor of the debtor, deference should be given to the bankruptcy court's factual findings. *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997) (citing *In re Burgess*, 955 F.2d 134 (1st Cir.1992)).

## IV. DISCUSSION.

Prior to filing his Chapter 7 petition, the debtor's employer was alleged to have breached its collective bargaining agreement. The debtor's union filed a grievance against the employer which resulted in an arbitration award against the employer in favor of its employees, including the debtor. When the employer failed to pay the sums due pursuant to the arbitration award, the debtor entered into a contingency fee agreement with Annino for the purpose of engaging Annino to collect all sums due. The gross amount of the debtor's claim against his employer was approximately $16,000. The parties have stipulated that the debtor recovered the amount of $9,971.33 (net after taxes) in December of 1997, which he deposited immediately thereafter into his checking account. On January 30, 1998, Annino demanded payment of $5,386.56, the amount it claimed was due pursuant to the contingency fee agreement. The debtor did not pay. Thereafter, when the debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code, Annino filed an adversary complaint seeking the denial of the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A) on the grounds that the debtor fraudulently transferred the proceeds of the arbitration award to his father for the express purpose of avoiding Annino's claim.[1] 11 U.S.C. § 727(a)(2)(A) provides for denial of a debtor's discharge if:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

Except for the determination that the debtor acted with fraudulent intent, all the requisite elements of 11 U.S.C. § 727(a)(2)(A) are uncontested and are not the subject of this appeal, as set forth in the parties' Joint Pre-trial Statement as follows:

3. The Plaintiff is a creditor of the Defendant.

. . .

6. The Defendant transferred approximately Four Thousand Dollars ($4,000.00) to his father within one (1) year of the filing of the petition.

---

1. The debtor listed Annino's claim on his schedules as fixed and liquidated, although he stated the amount was uncertain. At trial, the debtor testified that he did not respond to Annino's payment demand because he believed that he did not owe the money. He offered no evidence to dispute the amount of Annino's claim.

b. The following issues of fact, and no others, remain to be litigated:

1. Whether the Defendant, with intent to hinder, delay or defraud a creditor, transferred, removed or concealed property of the Defendant within one year before the date of the filing of the Petition.

Appellee's App. pp. 101–102.

In addition to the Joint Pre-trial Statement, the bankruptcy court considered the debtor's petition, schedules and statement of financial affairs, the debtor's answers to interrogatories, and the trial testimony of the debtor and his father. On this evidence, the bankruptcy court denied the debtor's discharge under 11 U.S.C. § 727(a)(2)(A), finding that the debtor intentionally transferred money to his father with the actual intent to hinder, delay, and defraud Annino.

■ On appeal, the debtor argues that the bankruptcy court incorrectly concluded that he made the transfers to his father with the actual intent to hinder, delay and defraud Annino. The bankruptcy court ruled as follows:

The Court must therefore consider the surrounding facts and circumstances and draw inferences of a debtor's actual intent from that debtor's action. *In re Sterman,* 244 B.R. at 504; *In re Hunter,* 229 B.R. at 857; *In re Kablaoui,* 196 B.R. at 709; *Funeraria Porta Coeli, Inc. v. Rivera de Montes (In re Rivera de Montes),* 103 B.R. 362, 365 (Bankr. D.P.R.1989). Courts have also looked to certain recognized indicia or "badges of fraud" as further evidence of a debtor's actual intent to hinder, delay, or defraud under § 727(a)(2)(A). They include: (1) the lack of or inadequacy of consideration for the transfer; (2) the existence of a family, friendship, or special relationship between the parties; (3) an attempt by the debtor to keep the transfer a secret; (4) the financial condition of the party sought to be charged both before and after the transaction; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the overall chronology of events and transactions. *In re Hunter,* 229 B.R. at 857; *In re Hayes,* 229 B.R. at 262; *In re Kablaoui,* 196 B.R. at 709–10. While the presence of a single factor set forth above may lead to mere suspicion for § 727(a)(2) purposes, the accumulation of several factors indicates strongly that a debtor possessed the requisite improper intent. *In re Sterman,* 244 B.R. at 504; *Cogliano v. Hegarty (In re Hegarty),* 208 B.R. 760, 766 (Bankr.D.Mass. 1997).

March 31, 2000 Memorandum of Decision p. 8.

On appeal, the debtor relies on these very same badges of fraud, without reference to specific record cites, to argue that the evidence does not support the bankruptcy court's findings. However, "[a] finding of fact is clearly erroneous when the reviewing court is left with the abiding and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Upon review of the evidence in the record in this case, the bankruptcy court made no mistake.

■ Based on his testimony and demeanor, the bankruptcy court concluded that the debtor was not a credible witness because his trial testimony was, in and of itself contradictory, and it did not square with the information contained in the debtor's schedules which described the money transfers to his father as a payment to a creditor. The conclusion that the debtor lacked credibility is supported by the debtor's trial testimony as follows:

Q: How come your father isn't listed as a creditor?

A: Because my father's not a creditor.

Q: Okay. Was your father a creditor?

A: No.

542

Q: Okay. When you said you paid him $4,000, what was that payment for?

A: I didn't make a payment. I gave my father money, and I didn't know exactly how much it was.

Q: You don't know how much you gave him?

A: Not exactly.

. . .

Q: What you—what I just heard say is that your father wasn't a creditor.

A: He wasn't a creditor. I—that's a payment that I made.

Q: Okay, well, why would you say in the bank—

A: I didn't make—I didn't—I just came up with a number. I wasn't sure how much it was.

[And later in that same line of inquiry, the debtor responded as follows:]

Q: Do you know why you gave your father the money?

A: Because he is my father and I love him and I wanted to help him.

Trial transcript pp. 33–36.

In addition to the debtor's lack of credibility, the bankruptcy court relied on several other indicia of fraud, including the fact that the debtor made these cash transfers to a close relative at a time when the debtor was actively being pursued by a creditor with a valid claim; the debtor kept no records of the cash transfers; and the cash transfers were made for less than reasonably equivalent value. Given the debtor's contradictory statements that the money was gift, followed by his testimony that the money was payment to his father in return for sums advanced by his father during the debtor's prior period of unemployment, the bankruptcy court's finding that the debtor's payments to his father were made for less than reasonably equivalent value is well founded.

The bankruptcy court's determination that the debtor intentionally misidentified the nature and amount of cash transfers that he made to his father is supported by the evidence and it was proper for the court to include the intentional misidentification as a factor in evaluating whether the debtor acted with intent to hinder, delay and defraud Annino.

## V. CONCLUSION.

The evidence in the record supports the bankruptcy court's evaluation of the debtor's credibility and supports the bankruptcy court's findings that the debtor made cash transfers to his father with the actual intent to hinder, delay and defraud Annino. The order denying the debtor's discharge is AFFIRMED.