**Elliott M. ROWLANDS, Debtor.**

**Elliott M. Rowlands, Defendant–Appellant,**

v.

**Arthur J. Fraser and AJF Financial Corp., Plaintiffs–Appellees.**

**BAP No. 05–057.**
**Bankruptcy No. 03–10933–WCH.**
**Adversary No. 04–01442–WCH.**

United States Bankruptcy Appellate Panel for the First Circuit.

June 28, 2006.

Michael S. Kalis, Esq., on brief for Defendant–Appellant.

Richard W. Bland, II, Esq., and Isaac H. Peres, on brief for Plaintiffs–Appellees.

Before LAMOUTTE, VAUGHN and DEASY, United States Bankruptcy Appellate Panel Judges.

VAUGHN, Bankruptcy Judge.

Elliot M. Rowlands (the "Debtor") appeals from an order of the United States Bankruptcy Court for the District of Massachusetts (the "bankruptcy court") dated November 9, 2005, granting summary judgment in favor of Arthur J. Fraser and AJF Financial Corp. (the "Appellees") and denying a discharge to the Debtor pursuant to 11 U.S.C. § 727(a)(2)(A). In ruling for the Appellees, the bankruptcy court concluded that, during the year preceding the bankruptcy filing, the Debtor fraudulently retained a secret beneficial interest in two separate properties owned by his sister, Florence Biggs, as trustee of both the Rowlands Realty Trust and the Rowlands Family Trust. For the reasons set forth below, the decision is REVERSED and REMANDED for an evidentiary hearing.

## BACKGROUND

### A. The Bankruptcy Case

On February 5, 2003, the Debtor filed a voluntary Chapter 13 petition. Thereafter, he filed his schedules and statement of financial affairs. On Schedule A, he indicated that he had no interest in any real property. In December 2004, the Appellees commenced an adversary proceeding against the Debtor objecting to the granting of a discharge in favor of the Debtor pursuant to § 727(a)(2)(A).[1] The basis of the objection was that during the year preceding the bankruptcy filing, and for several years prior, the Debtor fraudulently retained a secret beneficial interest in two properties owned by his sister, in trust. The Debtor filed a response to the complaint, asserting numerous affirmative defenses and a counterclaim against the Appellees. Thereafter, the Appellees filed a motion for summary judgment, which the Debtor opposed. After a hearing on the summary judgment motion on November 9, 2005, the bankruptcy court entered an order granting summary judgment in favor of the Appellees. This appeal followed.

### B. The Properties

#### 1. The Kingston Property

In July 1988, the Debtor established a trust called the Rowlands Realty Trust. The trustee was Florence Biggs, the Debtor's sister, and the beneficiary of the trust was the Debtor's daughter, Ellyn M. Rowlands. In August 1988, Biggs, as trustee, bought a commercial property located at 70 Pembroke Street, Kingston, Massachusetts (the "Kingston Property"). Biggs testified at her deposition that although the trust purchased and mortgaged the Kingston Property, it was the Debtor who provided the money and made all the arrangements for the purchase. The Kingston Property has never been owned in the Debtor's name.

The Kingston Property became the site of EMR Enterprises, Inc., a used car dealership of which the Debtor and his son were principals. The dealership operated from 1988 to 2002. In 2004, the property was leased to a Dunkin' Donuts restaurant. According to the trustee, the Debtor negotiated the lease and continues to manage the relationship with Dunkin' Donuts.

#### 2. The Easton Property

The Debtor resides at a property located at 43 Guinevere Road, Easton, Massachusetts (the "Easton Property"). The home was originally owned by the Debtor's mother and was transferred to him in 1978 when his mother became ill. On June 15, 1989, the Debtor created a second trust called the Rowlands Family Trust.[2] On that same date, the Debtor transferred the Easton Property to the Rowlands Family Trust for one dollar. The Debtor continues to reside at the Easton Property. Although the Debtor does not pay rent, he makes all of the mortgage, tax, and utility payments.

## JURISDICTION

The bankruptcy appellate panel's jurisdiction includes appeals "from final judgments, orders and decrees." 28 U.S.C. § 158(a)(1) and (b); *see also Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision

---

1. All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, *et seq.*

2. Florence Biggs and Ellyn Rowlands are also the trustee and beneficiary, respectively, of the Rowlands Family Trust.

is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). A bankruptcy court's order denying a discharge to a debtor pursuant to § 727(a)(2)(A) is a final, appealable order. *See Annino, Draper & Moore, P.C. v. Lang (In re Lang),* 256 B.R. 539 (1st Cir. BAP 2000).

## STANDARD OF REVIEW

 Generally, a bankruptcy court's factual findings are reviewed under the clearly erroneous standard and conclusions of law are reviewed *de novo. See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994). The bankruptcy court's grant of summary judgment is reviewed *de novo. See McCrory v. Spigel (In re Spigel),* 260 F.3d 27, 31 (1st Cir.2001); *Campana v. Pilavis (In re Pilavis),* 244 B.R. 173, 174 (1st Cir. BAP 2000); *see also Rosen v. Bezner,* 996 F.2d 1527, 1530 n. 2 (3d Cir. 1993).

## DISCUSSION

The issue before the Panel is whether the bankruptcy court erred in determining that the Appellees had established all the elements of § 727(a)(2)(A) necessary to deny the Debtor a discharge. The bankruptcy court granted the Appellees' motion for summary judgment at the conclusion of a non-evidentiary hearing.

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rodriguez–Pinto v. Tirado–Delgado,* 982 F.2d 34, 38 (1st Cir. 1993) (quoting *United States v. One Parcel of Real Prop.,* 960 F.2d 200, 204 (1st Cir. 1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). Courts faced with a motion for summary judgment should read the "record in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

### B. Section 727(a)(2)(A) and the Continuing Concealment Doctrine

 A denial of discharge under § 727(a)(2)(A) requires that the movant prove by a preponderance of the evidence the following four elements: "(1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) his or her property, (3) within one year of the bankruptcy petition's filing, (4) with the intent to hinder, delay, or defraud a creditor." *Rhode Island Depositors Econ. Prot. Corp. v. Hayes (In re Hayes),* 229 B.R. 253, 259 (1st Cir. BAP 1999). The courts have developed the "continuing concealment" doctrine to bring within the ambit of § 727(a)(2)(A) certain acts that were performed prior to the one-year period. "The doctrine is most commonly invoked ... when a debtor, prior to the year before bankruptcy, has transferred property but has secretly held something back, and has concealed that secret interest in the

months immediately preceding bankruptcy." *Id.; Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 554–55 (5th Cir. 1987). A concealment made with the requisite intent, prior to the one-year period does not satisfy per se the statutory requirements of recent concealment and improper intent, but "may provide circumstantial evidence of concealment activity and fraudulent intent within that year." *In re Hayes*, 229 B.R. at 260; *Rosen v. Bezner*, 996 F.2d at 1533. As this Panel has previously cautioned, the continuing concealment doctrine must not be used to "short circuit" the § 727(a)(2)(A) analysis, as the doctrine's proper scope is limited to being an "exception to the one-year rule." *In re Hayes*, 229 B.R. at 260 (quoting *Tastee Donuts, Inc. v. Bruno*, 169 B.R. 588, 592 (E.D.La.1994)); *see also Small v. Bottone (In re Bottone)*, 209 B.R. 257, 262 (Bankr.D.Mass.1997) (warning that by using the continuing concealment doctrine "one runs the risk of becoming distracted from the task of establishing the essential elements of a case under § 727(a)(2)(A)").

## C. The Bankruptcy Court's Findings

At the conclusion of the hearing on the Appellees' summary judgment motion, the bankruptcy court made its findings. The bankruptcy court primarily relied on its previous decision in *In re O'Brien*, 190 B.R. 1 (Bankr.D.Mass.1995), stating that the instant case and *O'Brien* presented "this precise issue on continuous concealment on frankly almost identical facts." In *O'Brien*, the debtor transferred his interest in the marital home to his wife for one dollar at a time when the debtor and his wife thought that the Plymouth State Bank would pursue the debtor's interest in the property. *Id.* at 2. Both the debtor and his wife admitted at trial that the transfer was intended "to protect it from creditors." *Id.* Although the transfer occurred more than one year prior to the filing of the bankruptcy petition, the court in *O'Brien* denied the debtor's discharge pursuant to § 727(a)(2)(A), relying on the continuing concealment doctrine to satisfy the requirement that the concealment occur and the intent exist within one year before the date of the filing of the petition.

Despite the bankruptcy court's statements, there are significant distinctions between the instant case and *O'Brien*. First, *O'Brien* was decided after a trial rather than on a motion for summary judgment. "Issues of intent can rarely be resolved on summary judgment," *In re Bottone*, 209 B.R. at 264, because all reasonable inferences must be drawn in favor of the nonmoving party, that is, the debtor. Second, in *O'Brien* the existence of the requisite intent, at least at the time of the transfer, was undisputed because the debtor and his wife admitted to trying to keep the home from the reach of creditors. In the instant case, though, the Debtor maintains that he put the Easton Property into trust at the time of his second marriage in order to assure that his children from his first marriage would benefit from the property, rather than his second wife in the event of another divorce. Based on the following passage, the bankruptcy court apparently considered the Debtor's reason for putting the property into trust to be commensurate with the *O'Brien* admissions:

> You—everybody should have read *O'Brien*. Mrs. O'Brien got on the stand and says, "Yeah, I told him to put the property in my name so that the damn bank wouldn't get it."
>
> . . . .
>
> … And now this one we have other testimony saying he was trying to keep it from wife number two . . . ."

The third significant distinction between *O'Brien* and this case is that, in *O'Brien*, the court found that in order for the concealment to justify the denial of a discharge, the intent to hinder, delay, or de-

284

fraud must be actual. Such a finding was not made in this case. The distinctions between the cases render this an insufficient finding of improper intent at the time of the transfer, much less in the year preceding bankruptcy.

Beyond its reliance on *O'Brien*, the bankruptcy court's findings concerning the four elements of § 727(a)(2)(A) are limited to the following:

Well, we have a motion for summary judgment on very traditional facts. Property purportedly that of the debtor is in the name of somebody else, and it got there some time ago; and the question is whether this is a fraudulent transfer, which would result in the debtor being denied his discharge under this complaint.

... and what facts do I have well pled in the motion for summary judgment and not disputed, and that is that the [Debtor] retained all of the benefits of, and the expenses connected with the property, notwithstanding the fact that the title was in the trust, of which his sister was Trustee; and that went on for all those years, and that, under the cases—I won't go beyond *O'Brien* because I really don't think I have to. That, under all the case, continuous concealment."

These statements do not suffice to cover the four requirements of § 27(a)(2)(A). In particular, there are no findings that, within the year preceding bankruptcy, the Debtor concealed an interest in property with the intent to hinder, delay, or defraud a creditor. The bankruptcy court found that a concealment and an improper intent existed at the time of the transfers to the trusts, "to keep it from wife number two." The actions took place several years prior to the filing of the bankruptcy petition. Such transfers would only be circumstantial evidence that a concealment with an intent to hinder, delay, or defraud a creditor continued to exist in the year prior to

bankruptcy. *In re Hayes*, 229 B.R. at 260; *Rosen v. Bezner*, 996 F.2d at 1533.

Viewing the evidence in the light most favorable to the Debtor, we conclude that there are genuine issues especially with regard to whether a concealment of an interest in property of the Debtor occurred with the intent to hinder, delay, or defraud a creditor, and, if so, whether such concealment continued to exist, *with the requisite intent,* during the year preceding bankruptcy. Those are relevant and material facts that should be determined following an evidentiary hearing.

### CONCLUSION

For the reasons stated, we conclude that the bankruptcy court failed to make sufficient findings showing that no issues of material fact exist. Accordingly, the decision of the bankruptcy court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.