**NOT FOR PUBLICATION**



# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-14-1028-KiTaD |
| ) | |
| JAMES L. GERARD, Jr. and ) | Bk. No.   10-13508-GM |
| JULIE S. GERARD, ) | |
| ) | Adv. No.   1:10-1261 |
| Debtors.    ) | |
| ) | |
| ) | |
| DIANE GOLDMAN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| JULIE S. GERARD, ) | |
| ) | |
| Appellee.    ) | |

Argued and Submitted on October 23, 2014,
at Malibu, California

Filed - December 8, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Geraldine Mund, Bankruptcy Judge, Presiding

Appearances:   Diane Goldman, appellant, argued pro se; Anthony
Daniel Zinnanti argued for appellee, Julie S.
Gerard.

Before:   KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

Creditor Diane Goldman ("Goldman") appeals an order granting the motion of debtor Julie S. Gerard ("Debtor") to reopen an adversary proceeding and determining that Debtor did not breach a settlement agreement related to a nondischargeability judgment entered previously in Goldman's favor. Two other issues raised in Debtor's motion were not (and still have not been) decided in the instant order. Because the order on appeal is not final, we DISMISS for lack of jurisdiction.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Goldman and Debtor were law partners until November 2007. After termination of their partnership, Goldman sued Debtor in state court for breach of fiduciary duty, breach of written contract and other claims. In short, Goldman contended Debtor had taken funds in excess of her one-half share allowed under the partnership agreement.

After trial, the state court entered a judgment in favor of Goldman for $93,354.46 plus interest, costs and attorney's fees. The amount of attorney's fees was to be determined at a later hearing, but that matter was taken off calendar once Debtor and her husband filed their chapter 7[2] bankruptcy case. Goldman incurred approximately $147,000 in attorney's fees in the state court litigation.

### A. The adversary proceeding

Goldman timely filed a nondischargeability complaint seeking to except her debt of approximately $240,000 ($93,354.64 plus an

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

estimated $147,000 in fees and costs) from Debtor's discharge under § 523(a)(2)(A), (a)(4) and (a)(6).[3] The parties settled the matter at mediation.

A Settlement and Release Agreement ("Settlement Agreement") was executed in connection with the nondischargeability action. According to the Settlement Agreement, Debtor agreed to pay Goldman $25,000 on or before March 1, 2011. She also agreed to assign to Goldman a beneficial interest of $125,000 in her existing $500,000 whole life insurance policy, as Debtor had just been diagnosed with Stage IV colon cancer. In lieu of the insurance interest, Debtor could also satisfy her obligation to Goldman if she paid Goldman $85,000 or before March 1, 2016. Goldman would receive a nondischargeability judgment for $240,000, reduced to $215,000 upon Debtor's timely payment of $25,000, which Goldman agreed not to enforce unless Debtor defaulted under the terms of the Settlement Agreement. Debtor could default by: (1) failing to "make any payment when the same shall become due;" (2) failing to "make any premium payment when due;" (3) the lapse of any coverage provided under the life insurance policy; or (4) breaching any other terms or conditions.

In Paragraph 3 of the Settlement Agreement, the parties agreed the bankruptcy court "would retain jurisdiction over the terms of the [Settlement Agreement] and its enforcement," and further agreed in Paragraph 17 that all actions or proceedings arising in connection with the Settlement Agreement would be "tried and litigated only in the Bankruptcy Court of the Central

---

[3] Goldman also plead § 727 claims against Debtor, but these claims were later dismissed.

-3-

District of California."

The bankruptcy court entered the parties' signed Stipulation for Judgment of Nondischargeability of Debt (the "Stipulation") and the Judgment for Nondischargeability of Indebtedness (the "Judgment") in February 2011. The Stipulation referenced the Settlement Agreement and set forth its essential terms. The parties agreed that Goldman was entitled to a nondischargeability judgment of $240,000 under § 523(a)(2)(A), (a)(2)(B) and (a)(6), which was enforceable only if Debtor failed to comply with the terms of the Settlement Agreement. The Judgment stated that the court had approved the terms and content of the Stipulation.

Debtor made the initial $25,000 payment to Goldman. She also executed an assignment of the beneficial interest in her life insurance policy to Goldman.

Debtor received a discharge, and the bankruptcy case was closed on March 1, 2011. The adversary proceeding was dismissed by a clerk's entry on November 19, 2012.

**B.    Events leading to the motion to reopen the adversary proceeding**

On or about December 4, 2012, Goldman received a notice from New York Life that Debtor had failed to pay the policy premium due on November 3, 2012. To "keep the coverage in force," Debtor was to make the premium payment by no later than January 3, 2013. If payment was received by that date, New York Life would "promptly reinstate [Debtor's] coverage, provided all persons covered under the policy are living when payment is received." In addition to paying by cash, Debtor could also pay the premium via the company's Automatic Premium Loan ("APL") option (take out a loan

-4-

against the policy to make the payment) or the Default Premium Payment option, where the company would apply Debtor's dividend credits to pay the "overdue premium."

Counsel for Goldman, Susan L. Vaage ("Vaage"), sent a letter to Debtor's counsel concerning the nonpayment of the premium and advised counsel that Debtor was in default of the Settlement Agreement. Vaage claimed she heard nothing further from Debtor's counsel. Debtor eventually paid the premium on December 20, 2012, using the APL option.

Believing that Debtor had breached the Settlement Agreement, Goldman filed an abstract of judgment for $240,000 ("Abstract"), which was recorded on January 17, 2013. The Abstract listed Debtor's home address incorrectly in both places on the form. Debtor claimed she never received notice of the Abstract.

Goldman received similar notices of Debtor's failure to pay the insurance premiums when due on July 3 and August 3 of 2013. The notices referenced a grace period and stated that failure to pay the premiums within 62 days "may result in your policy lapsing." The notices further explained that allowing the policy to lapse would result in no payment of death benefits. In response to the July notice, Vaage sent a letter to Debtor's counsel stating that Debtor's nonpayment of the premium was a default under the Settlement Agreement and entitled Goldman to the entire $240,000 Judgment, less the $25,000 received. Notably, Vaage made no mention of the Abstract recorded in January 2013. The July 3 premium was eventually paid by check on August 1, 2013, and the August 3 premium was paid on October 9, 2013, by the APL option. Both premiums appear to have been paid within the 62-day

grace period.

In December 2013, Debtor's counsel sent a letter to Vaage inquiring why the Abstract was recorded in January 2013, since Debtor's insurance premiums had always been maintained and were current. Apparently, Debtor was trying to sell her current home in Calabasas and purchase another one in Ojai and Goldman's lien was hindering that process. In reply, Vaage explained that Debtor had defaulted "when she allowed the premium payments to lapse" and Debtor only later reinstated the policy. Vaage explained that when she did not hear anything from Debtor or Debtor's counsel in response to her default notice letter in December 2012, she applied for the writ of execution and Abstract.

**C.    Motion to reopen the adversary proceeding and related relief**

On January 9, 2014, Debtor filed her Ex Parte Motion to Reopen Adversary Proceeding to Interpret Court's Judgment and Settlement Agreement Incorporated Therein, To Rescind Unauthorized Issuance of Abstract of Judgment, and to Hold Diane Goldman in Contempt of Court (the "Motion"). Debtor requested that the Motion be heard on shortened notice because the escrows for the home sale and purchase were scheduled to close on January 20.

Debtor denied defaulting under the Settlement Agreement. She contended that the language "when due" with respect to premium payments was not defined and never specified that payment must be made when first due. She further denied the policy ever lapsed. Debtor also disputed whether taking loans against the policy constituted a default. Debtor contended the Abstract should be rescinded because: (1) she did not breach the Settlement Agreement; (2) the dollar amount was wrong and should be $215,000

-6-

instead of $240,000 due to her $25,000 payment; and (3) it failed to state Debtor's correct address as required by California law. Finally, Debtor contended that Goldman should be held in contempt for secretly enforcing a judgment to which she was not entitled.

The bankruptcy court granted the order shortening time and set the Motion for hearing on January 14, 2014. Goldman could oppose the Motion orally at the hearing.

In her written opposition to the Motion, Goldman contended the bankruptcy court lacked jurisdiction to determine whether Debtor defaulted under the Settlement Agreement. She further argued that Debtor had breached the Settlement Agreement by: (1) taking out loans against the insurance policy that impaired Goldman from being paid first on the policy as the parties agreed; (2) allowing the policy to lapse in December 2012 for nonpayment of premium; and (3) failing to pay the premiums "when due" on at least three occasions. Even though Debtor eventually paid the premium after the December 2012 default and the policy was reinstated, Goldman argued that the Settlement Agreement did not contemplate such cures. Further, no benefits would have been paid to Goldman had Debtor died while the policy was not in effect. Thus, Goldman believed she was entitled to the nondischargeability judgment of $240,000 because of Debtor's multiple defaults.

On the evening before the hearing, Debtor filed a declaration from her insurance agent, Cary Richman ("Richman"). Richman testified that Debtor's life insurance policy could not have lapsed because sufficient cash existed in December 2012 to make the payment via the APL option.

At the start of the hearing, the bankruptcy court expressed

-7-

its reluctance to decide anything other than how to get the escrows to close on time. Debtor's alleged breach of the Settlement Agreement, the propriety of the recorded Abstract or Goldman's alleged contempt could be decided at a later date. When counsel for the parties expressed a desire to have all matters raised in the Motion decided that day, the bankruptcy court agreed and accommodated them.

After hearing argument from the parties, the bankruptcy court ruled on the Motion. It granted relief to reopen the adversary proceeding and to interpret the Settlement Agreement and Judgment. The court found that the type of borrowing that occurred against the insurance policy — i.e., to pay premiums — was not the type of borrowing contemplated by the Settlement Agreement, so Debtor's loans to pay premiums were not a violation.

The court then considered whether Debtor allowed the policy to lapse. After carefully reviewing the evidence, the bankruptcy court stated that it could not make that determination based on what was before it; additional evidence was needed. Hr'g Tr. (Jan. 14, 2014) 40:24-47:16. It then went on to conclude that use of the term "reinstate" in the late payment notices could mean the policy lapsed, but that it could also mean the policy was only suspended unless the premium was paid by January 3, 2013, which it was. Id. at 47:18-48:14.

Ultimately, the bankruptcy court did not rule on whether or not the insurance policy lapsed. Vaage then reiterated that failure to make premium payments "when due" was also a default under the Settlement Agreement. On that issue, the court ruled:

THE COURT: Okay. All right. I'm just going to rule.

-8-

> I'm going to rule that she has not breached the agreement and you're entitled to your $85,000 and it's to be paid out of this escrow and it's over with. And if it's not paid out of the escrow, then we're going to go back and retool all of this to make sure that it gets -- that actually, I'm going to say if it's not paid out of the escrow, then you get your judgment for the . . . whole thing.

Id. at 49:8-16.

The bankruptcy court entered an order granting the Motion on January 16, 2014 ("Order"), which Goldman timely appealed. The Order included a finding that Debtor "did not breach the Settlement Agreement incorporated into this Court's Judgment entered in this adversary proceeding on February 8, 2011[.]" The Order directed that payment of $85,000 to Goldman from the escrow would fully satisfy the Judgment. If the $85,000 was not paid, Goldman was entitled to $215,000, the $240,000 Judgment minus the $25,000 already paid.

**D.  Events after entry of the Order and notice of appeal**

In her motion for stay pending appeal, Goldman contended that the alleged $400,000 equity in Debtor's Calabasas home, which was being sold, was the only source of recovery to satisfy the Judgment should she prevail on appeal. Thus, a stay was needed to preserve the funds, particularly the $130,000 balance that would be owed to her if she succeeded in reversing the Order.

Debtor responded within twenty-four hours with her emergency motion to:  (1) issue an OSC for why Goldman should not be held in contempt for new actions which violated the Order; (2) enjoin Goldman to comply with the Order; (3) authorize others to act on Goldman's behalf to effectuate the home sale; (4) order the clerk to issue a certificate of satisfaction of the Judgment; and

(5) relieve Debtor of the Judgment under Civil Rule 60(b). Debtor contended that Goldman had violated the Order by recording a new abstract of judgment for $215,000 and making a demand upon escrow for just over $215,000, instead of the $85,000 directed in the Order. Debtor simultaneously filed an adversary complaint seeking the same relief as in the emergency motion.

The bankruptcy court granted both parties' requests for a hearing on shortened time. At the January 24, 2014 hearing, Goldman agreed to withdraw her motion for stay pending appeal based on the following relief stipulated by the parties: (1) Goldman would receive the $85,000 cash payment from escrow; (2) Goldman would remove the new abstract of judgment for $215,000 on Debtor's Calabasas home to facilitate the sale; and (3) Goldman could then file a new abstract of judgment for $130,000 on Debtor's new home in Ojai once the sale closed. The court entered an order approving the parties' stipulated relief that same day.

## II. JURISDICTION

Goldman contends the bankruptcy court lacked jurisdiction to reopen the adversary proceeding and interpret the Judgment and Settlement Agreement. Debtor contends we lack jurisdiction to review the Order because the appeal is moot. We independently question whether the Order on appeal is final. These jurisdictional issues are addressed below.

## III. ISSUES

1. Did the bankruptcy court have jurisdiction to reopen the adversary proceeding and interpret the Judgment and Settlement Agreement?

2. Is the Order final and appealable?

**IV. STANDARDS OF REVIEW**

We review de novo questions of subject matter jurisdiction. Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1284 (9th Cir. 2013).

We review our own jurisdiction, including questions of finality, de novo. Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003).

**V. DISCUSSION**

**A.  The bankruptcy court had jurisdiction to reopen the adversary proceeding and interpret the Judgment and Settlement Agreement.**

The bankruptcy court had exclusive jurisdiction over the particular nondischargeability claims at issue here. Rein v. Providian Fin. Corp., 270 F.3d 895, 904 (9th Cir. 2001)(bankruptcy courts have exclusive jurisdiction over nondischargeability actions brought under § 523(a)(2), (4) and (6)); § 523(c). Goldman disputes whether the bankruptcy court had subject matter jurisdiction to consider the Motion, which sought to reopen the adversary proceeding and to interpret the Judgment and Settlement Agreement.  The bankruptcy court never addressed Goldman's concerns on this issue, but we can presume based on the record that the court believed it had jurisdiction.  We must satisfy ourselves of the bankruptcy court's subject matter jurisdiction. Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.), 300 B.R. 489, 497 (9th Cir. BAP 2003)(citing Arizonans For Official English v. Ariz., 520 U.S. 43, 73 (1997)).

Debtor contends that subject matter jurisdiction was conferred pursuant to § 105(a).  However, § 105(a) does not confer

-11-

subject matter jurisdiction on the bankruptcy court. In re Birting Fisheries, Inc., 300 B.R. at 497. "'Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power under section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction.'" Id. (quoting Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.), 885 F.2d 621, 624 (9th Cir. 1989)).

We conclude, nonetheless, that the bankruptcy court had subject matter jurisdiction on the basis of statutory ("arising under") jurisdiction and/or ancillary jurisdiction.

The adversary proceeding involves the dischargeability of a debt. Such a proceeding "arises under" the Bankruptcy Code, because it is a cause of action created by § 523 and is a "core" proceeding the bankruptcy court may hear and determine. McCowan v. Fraley (In re McCowan), 296 B.R. 1, 3 (9th Cir. BAP 2003); 28 U.S.C. § 157(b)(1), (b)(2)(I). The bankruptcy court also has jurisdiction to enter a money judgment that fixes the amount of the nondischargeable debt. In re McCowan, 296 B.R. at 3 (citing Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015, 1017 (9th Cir. 1997)).

> It has been long settled that process in aid of and to effectuate an adjudication and order entered by a federal court may be enforced by that court "irrespective of whether the court would have jurisdiction if the proceeding were an original one" and that these principles apply in bankruptcy. Local Loan Co. v. Hunt, 292 U.S. 234, 239-40 (1934); accord Thomas, Head & Greisen Emps. Trust v. Buster, 95 F.3d 1449, 1453-54 (9th Cir. 1996).

> The rationale is that a federal court has "ancillary

-12-

enforcement jurisdiction" that is automatically available for use "in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." Peacock v. Thomas, 516 U.S. 349, 356 (1996). Accord Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379-81 (1994); Riggs v. Johnson Cnty., 73 U.S. (6 Wall.) 166, 187 (1867). Such ancillary enforcement jurisdiction is regarded as fundamentally a creature of necessity. Peacock, 516 U.S. at 359; Kokkonen, 511 U.S. at 380; Riggs, 73 U.S. at 187.

Id. (holding that bankruptcy court does not lack jurisdiction to enforce its own money judgments after bankruptcy case is closed).

Accordingly, actions brought to effectuate a judgment entered in the prior suit are ancillary to the original action; they are in essence a continuation of the original suit. Id. at 4 (citing Lawson v. Tilem (In re Lawson), 156 B.R. 43, 46 (9th Cir. BAP 1993); Jones v. Nat'l Bank of Commerce of El Dorado, 157 F.2d 214, 215 (8th Cir. 1946)). Thus, where a proceeding is brought to effectuate a judgment entered by the bankruptcy court, the proceeding is a continuation of the original proceeding, and jurisdiction depends on whether the original proceeding was within the bankruptcy court's jurisdiction. Id. (citing Peacock, 516 U.S. at 356).

The original proceeding to determine the dischargeability of a debt under § 523(a)(2) and (a)(6) was within the exclusive jurisdiction of the bankruptcy court, as was the Stipulation and Judgment entered regarding the debt. Therefore, Debtor's Motion, which sought to reopen the adversary proceeding and interpret the Judgment and related Settlement Agreement, continued to be a matter that "arises under" the Bankruptcy Code, and the bankruptcy court had jurisdiction to hear it. Id. at 5; In re Birting Fisheries, Inc., 300 B.R. at 499 (bankruptcy court's "core"

-13-

jurisdiction continues in order for it to enforce its orders, even after the case has been closed).

Two recent Ninth Circuit cases may arguably have impacted the holding of In re McCowan, the case upon which we rely heavily for our decision. In Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.), 439 F.3d 545 (9th Cir. 2006), the Ninth Circuit held that the bankruptcy court lacked jurisdiction to interpret a settlement agreement it had approved while the chapter 11 case was pending. The original adversary proceeding and settlement agreement was between debtor and one of its creditors. Id. at 547. After the chapter 11 case was dismissed, the creditor moved to reopen the bankruptcy case and filed an adversary proceeding against a third party, the State of Alaska, to have the bankruptcy court determine whether the settlement agreement released its fraudulent conveyance claim against Alaska. Id. The bankruptcy court determined it had jurisdiction over the second adversary proceeding as one "related to" the bankruptcy. The Ninth Circuit disagreed.

Valdez Fisheries is distinguishable on several important facts. First, the claim at issue was not one "arising under" the Bankruptcy Code but rather a state-law fraudulent conveyance claim between two creditors. Thus, "arising under" jurisdiction was not at issue. Further, the second adversary proceeding, unlike here, was not filed while the debtor's chapter 11 case was pending and did not have any direct impact on the debtor or the administration of debtor's estate. The Ninth Circuit indicated that had it been, the outcome would have been different. Id. at 548-49.

We further conclude that Battle Ground Plaza, LLC v. Ray

-14-

(In re Ray), 624 F.3d 1124 (9th Cir. 2010), which did address "arising under" jurisdiction, has not overruled In re McCowan. The Ninth Circuit reversed the BAP's ruling that the bankruptcy court had "arising under" jurisdiction over a breach of contract claim the BAP believed impacted the court's prior sale order. Id. at 1132-33. There, after the chapter 11 debtor's plan had been confirmed and the case closed, a lawsuit arose over the sale of real property that had been sold with the bankruptcy court's approval to a third party. A would-be purchaser brought suit in state court seeking damages for breach of contract against the debtor, the co-owner and the successful third-party purchaser. The state court thought it appropriate to "remand" the contract action to the bankruptcy court for it to determine whether it had jurisdiction over the matter. The bankruptcy court reopened the case, determined that it had jurisdiction over plaintiff's claims and granted summary judgment in favor of the debtor and co-owner dismissing the suit. Id. at 1129.

The Ninth Circuit overruled the BAP, holding that a state-law breach of contract action brought post-confirmation and post-closing arising out of the debtor's and co-owner's alleged failure to comply with the purchaser's right of first refusal was not a suit "arising under" the Bankruptcy Code for jurisdictional purposes. The court did not, however, hold that In re McCowan, which the BAP relied upon for its contrary holding, was no longer good law. In fact, the Ninth Circuit reaffirmed and distinguished In re McCowan, stating that "[t]he action in In re McCowan was for the direct enforcement of the bankruptcy court's order, a very different posture from the case before us." In re Ray, 624 F.3d

-15-

at 1132.

Arguably, the instant action could be characterized as an action for breach of contract. However, we conclude it is more like the action at issue in In re McCowan than in In re Ray; it was for the interpretation of, and, effectively, the direct enforcement of, the bankruptcy court's order regarding the dischargeability of a debt over which it had exclusive jurisdiction. Accordingly, the bankruptcy court had "arising under" jurisdiction.

Alternatively, the bankruptcy court had ancillary jurisdiction to interpret and enforce its prior Judgment and the related Settlement Agreement. "Ancillary jurisdiction may rest on one of two bases: (1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." In re Ray, 624 F.3d at 1135 (quoting In re Valdez Fisheries, 439 F.3d at 549)(citing Kokkonen, 511 U.S. at 379-80).

Goldman cites Kokkonen to support her argument that the bankruptcy court did not have ancillary jurisdiction over the Settlement Agreement because it failed to reserve jurisdiction over it. In Kokkonen, the Supreme Court held that a federal district court lacked jurisdiction to enforce a settlement agreement reached in conjunction with dismissal of a lawsuit under Civil Rule 41, where the district court neither reserved jurisdiction nor had independent jurisdiction to enforce the agreement. 511 U.S. at 375. The stipulation and dismissal order did not reserve jurisdiction over the settlement agreement or make any reference to the settlement agreement. The Supreme Court

-16-

noted:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the dismissal — either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. That, however, was not the case here. The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

Id. at 381. Thus, if the court's judgment incorporates the terms of a stipulated settlement or expressly retains jurisdiction over such a settlement, the court has ancillary jurisdiction to enforce the agreed judgment. Otherwise, enforcement of settlement agreements is for state courts. Id. at 382.

We distinguish Kokkonen on one critical fact. In that case, no "judgment" was ever entered by the district court. The parties agreed to settle their dispute and voluntarily dismissed the case pursuant to Civil Rule 41. Thus, the district court was never interpreting or enforcing its own order or judgment. Here, the bankruptcy court entered a judgment of nondischargeability of a debt against Debtor. As we have already stated, the bankruptcy court had jurisdiction to interpret and enforce its own judgment. In re McCowan, 296 B.R. at 4-5; In re Birting Fisheries, Inc., 300 B.R. at 499.

Further, as prescribed in Kokkonen and contrary to Goldman's contention, the bankruptcy court did reserve jurisdiction over the Settlement Agreement. The Judgment incorporated the Stipulation. The Stipulation incorporated the key terms of the Settlement Agreement. The Judgment also expressly incorporated the

-17-

Settlement Agreement:

> IT IS FURTHER ORDERED that this Judgment shall not be enforceable so long as [Debtor] performs under the terms of the Settlement Agreement entered into between the Parties, but that in the event of a default, [Goldman] may enforce this Judgment.

Goldman incorrectly asserts that the Settlement Agreement does not contain a provision requiring or allowing the bankruptcy court to determine if Debtor was in default of the Settlement Agreement. Paragraph 3 expressly reserved jurisdiction to the bankruptcy court, stating that it "would retain jurisdiction over the terms of the [Settlement Agreement] and its enforcement."

Accordingly, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(2)(I). We now address our jurisdiction.

**B. The Order is not a final appealable order.**[4]

Our jurisdiction requires that the order to be reviewed be final. 28 U.S.C. § 158. We generally lack jurisdiction to hear appeals from interlocutory orders. See Giesbrecht v. Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010).

A disposition is final "if it contains 'a complete act of adjudication,' that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter." Slimick v. Silva (In re Slimick), 928 F.2d 304, 307 (9th Cir. 1990)(citation omitted)(emphasis in original). In bankruptcy, a complete act of adjudication does not

---

[4] Debtor contends the Order is not a final order because the appeal is moot. We disagree. The jurisdictional concepts of finality and mootness are mutually exclusive. An interlocutory order does not equate to an appeal being moot, and a moot appeal does not necessarily mean that the order on appeal is not final.

need to end the entire case, but must "end any of the interim disputes from which appeal would lie." Id. at 307 n.1. The Order determined that Debtor did not breach the Settlement Agreement, and that a payment to Goldman of $85,000 out of the escrow would satisfy the nondischargeability Judgment. It did not, however, adjudicate the remaining two issues of whether Goldman properly filed her Abstract or whether she should be held in contempt of court.

Because Debtor was found not to have breached the Settlement Agreement, one could argue that the bankruptcy court did implicitly decide Goldman's filing of the Abstract was improper and that she was not entitled to enforce the $240,000 Judgment. An order can be considered final if the court's ruling as a practical matter effectively "rendered moot" all claims not explicitly disposed of. U.S. v. $5,644,540.00 in U.S. Currency, 799 F.2d 1357, 1361 (9th Cir. 1986). Even so, this still leaves the contempt issue, which does not appear to be "rendered moot" by anything decided in the Order. In any event, the bankruptcy court clearly anticipated further proceedings on these issues. If further proceedings in the bankruptcy court will affect the scope of the order, the order is not subject to review under 28 U.S.C. § 158. See Dunkley v. Rega Props., Ltd. (In re Rega Props., Ltd.), 894 F.2d 1136, 1138 (9th Cir. 1990).

The record evidences that this was not the bankruptcy court's final act in the matter. Evidence of intent consists not only of the order's content, but also of the judge's and parties' conduct. In re Slimick, 928 F.2d at 308. Statements by the bankruptcy court at the January 24, 2014 hearing on Goldman's motion for stay

-19-

pending appeal indicate that further proceedings are contemplated with respect to the Motion that led to the Order on appeal.

Specifically, the bankruptcy court stated that it had not determined whether the Abstract should have been recorded or whether Goldman should be held in contempt, and that those matters would be decided at a later date. Hr'g Tr. (Jan. 24, 2014) 18:2-10; 33:5-12; 34:8-12; 47:1-5; 52:2-7. The court also indicated that it had not decided the breach issue conclusively or, at minimum, that it was questioning its prior determination that Debtor had not breached the Settlement Agreement. Precisely, the court stated that the evidence so far was not dispositive and that discovery and more evidence were needed to decide the matter. Id. at 12:3-16; 18:10-19:5; 20:15-21:10; 29:8-30:4; 47:25-48:21; 50:21-23; 52:13-16. At one point, Goldman offered to withdraw her appeal if the parties were going to be allowed to relitigate the issue. Id. at 49:5-16; 51:1-5. The court responded that modification of the Order might be appropriate, but the pendency of the appeal likely barred it from making such a modification. Id. at 51:6-10. Goldman again offered to withdraw her appeal if the court was willing to modify the Order. Id. at 51:11-17. The court declined and instead set dates for future status conferences on the original contempt claim and the new contempt claim. Id. at 51:18-52:23. Based on the record, we conclude the Order is not a final appealable order.

We lack jurisdiction over interlocutory orders unless we grant leave to appeal. In re Giesbrecht, 429 B.R. at 687. Although Goldman has not filed a motion for leave to appeal, we may treat her timely notice of appeal as a motion for leave to

-20-

appeal. Rule 8003(c); <u>Kashani v. Fulton (In re Kashani)</u>, 190 B.R. 875, 882 (9th Cir. BAP 1995). Granting leave is appropriate if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); <u>In re Kashani</u>, 190 B.R. at 882. A substantial ground for difference of opinion exists "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions . . . ." <u>Reese v. BP Exploration (Alaska) Inc.</u>, 643 F.3d 681, 688 (9th Cir. 2011).

The Order at issue does not meet any of the requirements for granting leave to appeal. Whether Debtor breached the Settlement Agreement is not a controlling question of law which presents a novel issue over which fair-minded jurists might reach contradictory conclusions. Further, deciding the appeal will not materially advance the ultimate termination of the litigation. The issues regarding the Abstract and Goldman's purported contempt still remain to be decided. Once they are, the parties could appeal any subsequent order, which will lead only to piecemeal litigation based on the same facts and conduct. Therefore, we decline to grant leave to appeal.

## VI. CONCLUSION

Because the Order is not a final appealable order and we decline to grant leave to appeal, we lack jurisdiction over this appeal. Accordingly, we DISMISS.

-21-